1830.

Covenhoven
v.
Shuler.

----

COVENHOVEN and others *vs.* SHULER and others.

Where L. S. by his will, gave to his wife the one third of the residue of his personal estate, after his debts and legacies were paid, and also the use of all the residue of the personal estate and the occupation and enjoyment of the farm on which the testator lived, so long as she remained his widow ; and in case of her marriage, he gave to her during life the use and occupation of one third of his real estate ; and in that event, directed that the income of the remaining two thirds should be applied to the education and maintenance of his children ; and after the youngest child became of age, he directed his executors to divide all his real and personal estate equally among his children, to have and to hold to them and their heirs forever, and declared that he intended the bequest and devise to his wife should be in lieu of dower ; the wife elected to take under the provisions in the will ; it was held that the widow was entitled to the use of the whole estate during her widowhood ; that one third of the personal estate was hers absolutely, and in case she married that she would have the use of one third of the real estate for life in lieu of dower.

It was also held that the children of the testator could compel the widow to account for all the personal estate, and that their share of the same should be invested, and the income paid to the widow during her life or widow-

hood, and that the principal, after her death or marriage, should be divided among them according to the provisions in the will.

If two parts of a will are irreconcileable with each other, the last part is generally to be taken as evidence of the latest intention of the testator. But this rule is only applied to those cases where the two provisions are totally inconsistent with each other, and where the real intention of the testator cannot be ascertained.

The leading principle in the construction of wills is that the intention of the testator, if not inconsistent with the rules of law, must govern. And this intention is to be ascertained from the whole will taken together.

And where the intention of the testator is incorrectly expressed, the court will carry it into effect by supplying the proper words.

The words of the will may be transposed in order to make a limitation sensible or to effectuate the general intent of the testator.

Where specific chattels not necessarily consumed in the use are bequeathed for life with a limitation over, the practice is to require from the first taker an inventory of the goods, specifying that they belong to him for the particular period only, and afterwards to the person in remainder. And security is not required from the first taker unless there is danger that the articles will be wasted or otherwise lost by the remainderman.

If there is a general bequest of a residue for life with remainder over, although it includes articles which are consumed in the using, the whole must be sold and converted into money, and the proceeds invested; and the interest only is to be paid to the legatee for life.

If persons are made parties defendants unnecessarily, the bill will be dismissed as to them with costs.

LAWRENCE SHULER died in 1808, possessed of a farm containing about 300 acres, in fee, together with a considerable personal estate. He left by his wife Lena Shuler eleven children him surviving, to wit: Peter Shuler, Levi Shuler, Mary the wife of Jacob Serviss, Jeremiah Shuler, William Shuler, Caty the wife of Peter Covenhoven, Betsey Shuler, Sally Shuler, Abraham Shuler, Van Vleek Shuler, and Lawrence Shuler. The youngest was then less than one year old, and became of age in December, 1828. The will of Lawrence Shuler the elder, executed in due form of law to pass real estate, was in the following words: "I will and order that all my just debts and funeral expenses be paid out of my personal estate by my executors, as soon after my decease as they find themselves enabled conveniently to do it. Secondly, I give and bequeath unto my daughter Ann, wife of David Cady, the sum of $250, to be paid to her or her legal representatives, within one year after my decease by my executors, out of such of my personals as they may

*1830.*

Covenhoven
v.
Shuler.

April 6th.

think proper to dispose of for that purpose. Thirdly, I give, devise and bequeath unto my beloved wife Lena, the one third of the residue of my personal estate, after my debts, funeral expenses, and the above legacy to my daughter Ann shall be paid off and discharged; together with the use of all the residue of the personal estate and the occupation and enjoyment of that part of my real estate whereupon I now reside, containing 300 acres more or less, just as the same is now possessed by me, so long as she remains my widow; and after her marriage, I do give the use, occupation and enjoyment of one third of said real estate to her during her natural life; at which time the income of the remaining two thirds is to be applied for the education and maintenance of such children as she has together by me; and after the youngest of the said children shall become of age, I request and order my executors to make an equal division of all my real and personal estate to be made, equally to be divided among said children which I had by my wife Lena, to have and to hold them, their heirs and assigns forever. And I do hereby declare that the devise or bequest above made to my said wife is by me intended to be in lieu of, and an extinguishment of her right and title of dower to any part of my real estate. And lastly, I do hereby nominate and appoint my son John Shuler and my brother in law George Serviss, executors of this my last will and testament," &c. George Serviss died before the testator, and the other executors duly proved the will. Jeremiah Shuler died about three years after his father, unmarried and intestate. Peter Shuler, Mary the wife of J. Serviss, and William Shuler, after the death of Jeremiah and before the commencement of this suit, sold and conveyed all their interest in the estate to their mother the widow, who still remains unmarried. She elected to take the provisions made for her by the will in lieu of her dower; and the executor, after paying the funeral expenses, &c. and the legacy to Mrs. Cady, permitted her to take possession of the real and personal estate. In April, 1822, the widow leased the farm to Benjamin and Rufus Herrick for the term of five years, at the yearly rent of $200.

In 1824, Peter Covenhoven and wife, Van Vleek Shuler and Levi Shuler, and Lawrence Shuler than an infant of the age of sixteen years, by Covenhoven as his next friend, filed their bill in this cause against Lena Shuler the widow, and B. Herrick her tenant, and John Shuler the executor; and also against William, Betsey, Sally and Abraham Shuler, children of the decedent, who had refused to join as complainants in the suit. The bill alleged that the executor had collected and converted to his own use, or had wilfully and negligently permitted the widow to collect and convert to her use large sums of money due to the estate, and had permitted her to lay out the same in the purchase of the shares of two of the devisees and legatees, and that she had taken a conveyance of those shares in her own name; that the executor had taken no security from the widow to account for the personal estate when the youngest child came of age; that the personal responsibility of the executor had become a slender security for his liabilities as such executor; that he had large demands against him, and had threatened to put his property out of his hands for the purpose of avoiding the claims of the complainants against him. The same allegation in substance was made as to the widow. The bill also charged that the lease to Herrick was made with intent to defraud the complainants; that the complainant Lawrence Shuler had no means of maintenance and education except those provided by the will; that a suitable allowance ought to be made to him out the estate during his minority; that the executor and the widow had been requested to account to the complainant for the personal estate, and to make a suitable allowance for the maintenance of the infant Lawrence Shuler; that they refused to account for the personal estate, and also refused to support the infant unless he should remain in the family of his mother. The bill prayed an account of the personal estate from that executor and the widow, and that the same might be secured during the minority of the youngest child, and then distributed according to the will. The bill also prayed that a receiver of the rents and profits of the real estate might be appointed, and that an allowance might be made for the maintenance and educa-

1830.

Covenhoven
v.
Shuler.

tion of Lawrence Shuler out of the estate, and for general relief.

B. Herrick put in an answer denying all fraud in taking the lease, and all knowledge or information as to any claim against the farm by the complainants; and he insisted that he took the lease in good faith, believing that Lena Shuler had a perfect right to lease the farm for the five years. William Shuler stated in his answer that he had sold and conveyed to the defendant Lena Shuler all his interest in the estate, long before the filing of the bill; and that he believed that fact was well known to the complainants or to some of them; that he had never since claimed any interest in the estate, and he disclaims all title and interest therein. Lena Shuler by the answer admitted the facts stated in the bill, except as to her own insolvency or any fraud on her part. And she annexed to her answer an inventory of all the personal estate and effects of which her husband died possessed, with the value thereof. She also admitted that the whole came into her possession except the amount of the $250 legacy paid to Mrs. Cady; that she had sold many articles of the personal property, and had applied the proceeds thereof to the support of her children and in making advances to them and for her own uses; and that she was ready and willing to account for such articles at their full value. And she stated that she was also ready and willing to account for all the property belonging to the estate which had been received by her, and to give such security as the court should direct for the payment to the complainants respectively of such sums as they will be entitled to when the same shall become payable according to the will of the testator. But she insisted upon her right to retain the articles now on hand, and to restore them in specie when the children should be entitled thereto. She also claimed in her answer the right to retain the possession and use of all the real and personal estate of her husband during her widowhood, under the provisions of the will; and that in accounting with the complainants respectively, she was entitled to charge them with all monies which she had advanced for their support, maintenance and education. She further stated that she had refus-

ed to give security to the complainants because she believed they had no right to require the same; that she had also refused to advance money to Lawrence Shuler for his maintenance and education, and she insisted that she was under no legal obligation to do so, but that she had always been willing to support and maintain him, if he would submit himself to her direction and control; and that she had always been and still was desirous of educating and supporting him in the same manner as she had done the other children of the testator. The other defendants put in answers, substantially admitting the facts as was done in the answer of their mother, but without saying any thing as to the construction of the will. They admitted that they refused to become parties complainants to the suit, and insisted that they were unnecessarily made defendants. The cause was heard upon the bill and answers as against all the defendants except the executor, who did not answer.

*D. Cady,* for complainants. The bill was filed in this suit against John Shuler, executor of the will of Lawrence Shuler, Lena Shuler and such of the children of the testator as refused to be complainants. The children now disclaim all interest in the controversy, and claim to have the bill dismissed with costs. The bill cannot be dismissed for this cause, because it would have been bad upon demurrer if the children had not been made defendants. It is an established rule in equity, that the rights of all the parties in interest must be settled in one suit. (Mitf. Pl. 39, 144, 220.) The widow is only entitled under the will to the use of all the real and personal estate during widowhood, or until the youngest child arrives at the age of 21. The last clause of a will revokes a former one. (*Ulrich* v. *Litchfield,* 2 Atkins, 372. *Paramour* v. *Gardley,* 2 Plowd. R. 540.) Where there are inconsistent devises of real property, a joint tenancy or tenancy in common is created; otherwise as to personal property. (*Westfailing* v. *Westfailing,* 3 Atk. R. 461. 4 Cruise's Dig. 164, tit. Devise, ch. 9, § 22.) Herrick was made a defendant in order that he might be bound by an order for the appointment of a receiver of the rents and profits of the real

1830.

Covenhoven
v.
Shuler.

estate, which will be made, if it appears that the personal es-
tate has been wasted by the defendants Lena Shuler and
John Shuler. Lena Shuler having expended the personal
in the purchase of the real estate, the complainants are enti-
tled to a recovery against the real estate. The estate be-
ing given to the widow as a residue, the complainants are
entitled to an account of the same, and can insist upon its
being sold, the proceeds invested, and only the income paid
to the widow. (Preston on Legacies, 95, 96.)

*M. T. Reynolds*, for the defendants. The widow is not
bound to account to the complainants. They should have
called the executor to an account. The complainants can on-
ly require security for the payment of their share of the es-
tate when the same becomes due. The widow is entitled
under the will to the use of the real and personal estate dur-
ing her widowhood. This was the evident intention of the
testator; and this construction will give effect to the whole
will. The rules as to a joint tenancy can only be applied
where there is a manifest repugnancy. A receiver will not
be appointed, as the widow is abundently able to respond.
The children were improperly made parties, and the bill
should be dismissed as against them with costs. The only
object of this suit can be to obtain security from the widow,
not an account. And in such a case it was not necessary
the children should be made parties. As soon as they be-
came of age, they declared themselves opposed to this suit.
Both William Shuler and Herrick were necessary parties.
They are likewise entitled to have the bill dismissed as against
them with costs.

THE CHANCELLOR. As the complainants have not given
the defendants an opportunity to substantiate their answers
by proof, every matter of fact stated or insisted upon therein
is to be taken as true. The defendant W. L. Shuler, dis-
claims all interest in the subject matter of this suit. He says
he sold and conveyed all his interest in the estate to his moth-
er long before the filing of the bill; and that he believes that
fact was known to the complainants. They had therefore

no excuse for making him a party; and the bill as against him must be dismissed with costs. Herrick was also unnecessarily and improperly made a party to the suit. He was a bona fide lessee, for a term of years which would expire before the youngest child became of age. Even upon the complainants' construction of the will, the widow was entitled to the rents and profits of the farm until that time. And if they were entitled to a receiver of the rents and profits, to secure and apply them in aid of any deficiency of the personal estate, the tenant of the estate need not be a party to the suit. If he refused to attorn to the receiver, the latter might be directed to proceed against him in the name of the lessor to recover the rent as it became due. But there was no pretence for appointing a receiver of the income of the farm in this case during the minority of any of the children. The bill as against Herrick, must therefore be dismissed with costs.

The defendants Betsey, Sally and Abraham Shuler, were necessary parties, if the complainants are entitled to an account or to any other relief in this case. They had a common interest with the complainants in the estate, and in the establishment and construction of the will. If the bill can be sustained even for the purpose of obtaining security, the complainants would be permitted to retain it for the purpose of having the trusts of the will carried into effect under the direction of the court. This could not be done if all the parties interested in the estate were not before the court. Whether these defendants must bear their own costs, or whether they must be paid by the complainants, or out of the estate of the testator, are different questions.

The next question which arises in this case is, what interest in the property did the widow of the testator take under the will? The rule contended for by the complainants' counsel is undoubtedly correct, as stated by the master of the rolls in *Sims* v. *Doughty*, ( 5 Ves. 247. ) If two parts of a will are totally irreconcileable, the subsequent part is to be taken as evidence of a subsequent intention. But this rule is only adopted from necessity, to prevent the avoiding of both pro-

1830.

Covenhoven
v.
Shuler.

visions for uncertainty. It is only applied in those cases where the intention of the testator cannot be discovered, and where the two provisions are so totally inconsistent that it is impossible for them to coincide with each other, or with the general intention of the testator. The great and leading principle in the construction of wills is, that the intention of the testator, if not inconsistent with the rules of law, shall govern; and that intent must be ascertained from the whole will taken together; and no part thereof to which meaning and operation can be given, consistent with the general intention of the testator, shall be rejected. Where the words of one part of a will are capable of a two fold construction that should be adopted which is most consistent with the intention of the testator, as ascertained by other provisions in the will. And where the intention of the testator is incorrectly expressed, the court will effectuate it by supplying the proper words. The strict grammatical sense is not always regarded; but the words of the will may be transposed to make a limitation sensible, or to carry into effect the general intent of the testator. (11 Ves. 148. 1 Paige's R. 343.) In *Jesson* v. *Wright*, (2 Bligh's R. 56,) Lord Redesdale says, "It cannot at this day be argued, that because the testator uses in one part of his will words having a clear meaning in law, and in another part other words inconsistent with the former, that the first words are to be cancelled or overthrown." Testing the will in this case by these principles, I think the widow of the testator is entitled to the use of the whole estate during her life or widowhood. The general intent of the testator appears to have been to give one third of his personal estate to his wife absolutely, and the use of one third of his real estate for life in lieu of dower if she married a second time; and to give her the use of the whole estate for life if she remained his widow. He undoubtedly supposed if she remained single that she would support and educate her children out of the income and profits of the estate, until they were able to provide for themselves. There was little probability she would do injustice to any while there were no other claims on her bounty; and at her death, he intended they should share the property equally. It was,

however, necessary to provide for the contingency of a second marriage, when the property would be no longer under her control, but under that of her husband. The devise to her of the use of all the residue of the personal estate and the occupation of the farm so long as she remained his widow, is clear and explicit, and is expressed in language which can bear only one construction. The subsequent clause of the will, which was intended to provide for the contingency of a second marriage, is not so clear. The testator does not seem to have contemplated the possibility of her surviving him, and remaining unmarried until the youngest child, then an infant, became of age. He therefore directs that after her marriage, she shall only have the use of one third of the estate; from which time the income of the other two thirds was to be applied to the maintenance and education of the children; and that share of the estate was also in that case to be divided among the children equally, when the youngest became of age. If the last provision in the will can be considered as evidence of the final intention of the testator, a principle which I consider more fanciful than sound, it is in favor of the widow in this case; because the last declaration of the testator recognizes the devise and bequest before made to his wife, and declares that the same is intended to be in lieu of, and in extinguishment of her dower. As the contingency has not yet happened which was to deprive her of the use of any part of the estate, the complainants cannot claim a division of the property until her death or marriage. There can be no doubt of the right of the children of the testator by his wife Lena to the whole of the property, on the death of their mother, except the one third of the personals given to her absolutely. They take it by necessary implication, though not by the express words of the will. Where there is a bequest for life, or other limited period with a limitation over, of specific articles, such as books, plate, &c. which are not necessarily consumed in the using, the first taker was formerly required to give security that the articles should be forth coming on the happening of the contemplated event. And the remainderman must take them in the situation in which they will be left by the ordinary prudent use thereof by

**1830.**

**Covenhoven**
**v.**
**Shuler.**

the first taker. (*Hale* v. *Burrodale.* 1 Eq. Ca. Abr. 361. *Bracken* v. *Bently,* 1 Rep. in Ch. 110.) The modern practice in such cases is only to require an inventory of the articles, specifying that they belong the first taker for the particular period only and afterwards to the person in remainder; and security is not required, unless there is danger that the articles may be wasted or otherwise lost to the remainderman. (*Foley* v. *Burnell,* 1 Bro. Ch. Ca. 279. *Slanney* v. *Style,* 3 Peere Wms. 336.) Whether a gift for life of specific articles, as of hay, grain, &c. which must necessarily be consumed in the using, is to be considered an absolute gift of the property, or whether they must be sold and the interest or income only of the money applied to the use of the tenant for life, appears to be a question still unsettled in England. (3 Ves. 314. 3 Mer. 194.) But none of these principles, in relation to specific bequests of particular articles, whether capable of a separate use for life or otherwise, are applicable to this case. Where there is a general bequest of a residue, for life with a remainder over, although it includes articles of both descriptions as well as other property, the whole must be sold and coverted into money by the executor, and the proceeds must be invested in permanent securities, and the interest or income only is to be paid to the legatee for life. This distinction is recognized by the master of the rolls, in *Randall* v. *Russell,* (3 Mer. R. 193.) He says, if such articles are included in a residuary bequest for life, then they are to be sold and the interest enjoyed by the tenant for life. This is also recognized by Roper & Preston as a settled principle of law in England. (Prest. on Leg. 96. Roper on Leg. 209. See also *How* v. *Earl of Portsmouth,* 7 Ves. 137, and cases in notes.) The case of *De Witt* v. *Schoonmaker,* (2 John. R. 243,) seems to be in collision with this principle. But Mr. Justice Tompkins, who delivered the opinion of the court there, does not appear to have noticed the distinction between the bequest of a general residue, and the bequest of specified articles. He says, however, it was the duty of the executors on the death of the widow, to have paid and delivered the personal estate to the residuary legatee. If such was their duty, they were not bound

to deliver the principal of the estate into her hands without requiring security that it should be preserved and paid over to the residuary legatee after her death. That case was correctly decided; for it was manifestly the intention of the testator that the property should be delivered over to the son, after the death of the widow, and that he should pay the legacy to his sister. The court presumed he had received the property agreeably to the directions of the will, and the executors were held not to be liable to the legatee in a court of law.

In the case before me, the widow was not entitled to the use or possession of any specific article of the personal estate; but only to one third of the principal, and the interest or income of two thirds of the remainder, of the general residue, after the debts of the testator and the legacy to Mrs. Cady were paid or satisfied. The complainants are therefore entitled to an account of all the personal estate of the testator, in value as it existed at the death of their father; and after deducting the legacy to Mrs. Cady and the funeral charges and the expenses of administration, their share of the balance must be invested in permanent securities, and the income thereof paid to Lena Shuler during her life or widowhood; and the principal, after her death or marriage, must go to the complainants.

I have stated the rights of these parties in the hope that some arrangement may be made for the settlement of these family difficulties, without the necessity of any further litigation; and I have formed no definite opinion as to the question of costs on either side. But no decree for an account can now be made, as all the proper parties are not before the court. It appears by the pleadings that the testator left other children, besides those by Lena Shuler who were the residuary devisees and legatees in remainder. Jeremiah, one of the children of Lena Shuler, died after his father; and under the provisions of the will he took a vested interest in remainder in the personal as well as the real estate. (*Sturges* v. *Pearson*, 4 Mad. Rep. 411. *Benyon* v. *Maddison*, 2 Bro. C. C. 75. Preston on Leg. 70. 1 Roper on Leg. 376. 2 Dessaus. Rep. 295.) In that share of the estate John Shuler

1830.

Covenhoven
v.
Shuler.

and Mrs. Cady, and the other brothers and sisters of the half blood, if there are any, are equally entitled with those of the whole blood. The cause must therefore stand over, with leave to the complainants, or such of them as have not released their interest to their mother, to file a supplemental bill for the purpose of bringing the personal representative of Jeremiah Shuler before the court, or such other persons entitled to a distributive share of his estate as are not now parties. Those who have conveyed all their interest in the real and personal estate to their mother, since the death of Jeremiah, have no interest in the account to be taken, and need not be parties.