## Hankins's Estate.

A testator devised " to my daughter A. I give and devise the farm where I live, provided she does not get married. Should she get married, the said property shall be given up, and in lieu thereof I give and devise to her $500. Should she die or get married, then the property willed to her to be sold, and equally divided amongst the surviving heirs; A. to be considered as one of the heirs." A. died unmarried. *Held,* that the proceeds of the sale of the farm were to be divided among the surviving children and grandchildren of the testator: and that the executor of A. was not entitled to any part of it.

APPEAL from the decree of the Orphans' Court of *Allegheny* county.

Enoch Hankins died on the 29th of November 1835, leaving four children surviving him, and several grandchildren, the children of two deceased daughters. By his last will and testament, he thus disposed of part of his estate: " To my daughter Ann, I give and devise the farm and all the personal property which I now possess and whereon I live, provided she does not get married; also, the house and lot on the Monongahela river, on the same conditions. Should she get married, the said property shall be given up, and in lieu thereof I give and devise to her $500. Should Ann die or get married, then the real and personal property willed to her to be sold, and equally divided amongst the surviving heirs, Ann to be considered as one of the heirs."

In November 1839, Ann died unmarried and without issue, leaving a will and appointing executors. After her death, John Gilfillen, administrator, with the will annexed, of Enoch Hankins, sold the property devised to Ann, and the proceeds thereof were brought into the Orphans' Court for appropriation. The court referred the same to auditors, who reported, that upon the facts stated, the fund should be divided into seven shares, of which each of the four surviving children should be entitled to one share: the executors of Ann one share, and the children of the two deceased daughters each one share. This report was excepted to, on the ground that the executors of Ann were not entitled to any part of the fund: but the court confirmed the report of the auditors.

*Williamson* and *M'Candless,* for appellants.
*Van Amringe,* for appellee.

The opinion of the Court was delivered by

Rogers, J.—The great and leading rule in the construction of wills is, that the intention of the testator, if not inconsistent with

the rules of law, shall govern; and that no part thereof, to which meaning or operation can be given consistent with the general intention of the testator, shall be rejected. The strict grammatical sense is not always regarded, but the words of a will may be transposed to make a limitation sensible, and to carry into effect the general intention of the testator. 11 *Vez.* 148; 1 *Paige* 343; 2 *Paige* 130. Here the general intention of the testator was to make a comfortable provision for his daughter Ann during her life. And for this purpose he bequeaths her the farm and all the personal property he possessed, and on which he lived, and a house and lot on the Monongahela river. It was given to her on condition she should not marry; but if she did marry, the testator bequeaths her $500, and directs that the property devised be sold, and divided equally among all his children, of whom Ann was one. If, however, Ann died unmarried, he directs the property to go among his surviving heirs, which of course means his own heirs, viz: his surviving children and grandchildren. This, it is very apparent, was the general intention of the testator; but to carry this intention into effect, the language used is not the most clear. " To his daughter Ann he gives and devises the farm and all the personal property which he possessed, and on which he lived, and also the house and lot on the Monongahela, on the same conditions. Should she get married, the said property is to be given up, and in lieu thereof he devises to her $500. Should Ann die or get married, then the real and personal property willed to her to be sold, and equally divided amongst the surviving heirs, *Ann to be considered as one of the heirs.*" It is contended that the words " surviving heirs" applies to her death as well as marriage, and that she is a *surviving heir* in the contemplation of the testator, although she is dead. But this is a palpable absurdity, for which no rational reason has been given; for, there is nothing in the suggestion that the testator was desirous that she should have power to dispose of her share of the estate to reward those who might be heirs to her. Of this there is nothing in the will. It is but a fanciful notion, resting on conjecture merely. But by a transposition of the language we give every word in the will its proper and legitimate signification. Thus, by applying the words " *Ann to be considered as one of the heirs,*" to her, if she married, we effectuate the intention of the testator by giving her $500, and an equal dividend of the property sold, and thus producing an equality as he intended among his children. So, if she should die, (as was the case, without heirs), married, the property goes, as is perfectly right, to the surviving heirs of the testator, viz: his children and grandchildren. By this construction, we give effect to the intention of the testator, give every word its legitimate signification, and avoid the absurdity to which the other reading leads.

It is very plain that the words " Ann to be considered as one of the heirs," were an after-thought, and were designed to apply

[Hankins's Estate.]

to the improbable contingency of Ann's getting married. Suppose a person had said to the testator, " what do you mean if Ann marries ?" He would have answered, " I mean, that in that case she shall have $500, that the property given to her shall be sold, and shall be equally divided between her and her brothers and sisters, and thus produce an equality between them." " But suppose Ann dies without marrying ? Do you mean to say that Ann should be one of your *surviving heirs?*" We can readily understand his astonishment at the question. " One of my surviving heirs when she is dead ! That is nonsense ; do not attribute such folly to me. No, I intend in that event, that as the property has done its office by making her comfortable during life, it shall then descend to my children and grandchildren, whom I designate by the terms my surviving heirs."

We are, therefore, of the opinion that the court erred in appropriating any portion of the fund to the executors of Ann. The decree is reversed in that respect, and affirmed as to the residue.