## NANCE ET ALS. *vs.* COXE.

1. To enable the remainder man to demand security of him who has the present interest in a chattel, it is necessary that he should show that the chattel is in danger of waste or deterioration, or that it will be removed from the country, and his ability to obtain the possession, when the first estate determines, thereby rendered uncertain.
2. A bill by remainder men for security, which alleges that the property may be scattered, or that the defendant may remove it from the State,

and the complainants have no security for its delivery, when their right to possession accrues, is insufficient to authorise the interposition of a Court of Equity.

Error to the Chancery Court of Dallas. Before the Hon. David G. Ligon, Chancellor.

The bill in this case was filed by the complainants, and alleges, that in 1837, Lunda Lee, their grandfather, died, leaving two children, Betsey M. and Nancy H.—the first of whom, in 1832, intermarried with the defendant, Williams Coxe, and the last, in 1819, with James Nance, of which marriage the complainants and Pleasant Ann, the wife of Nixon Coxe, are the issue, and that they are now the only living descendants of Lunda Lee, except the said Betsey M., the wife of Williams Coxe: that previous to the marriage of the said Williams Coxe and Betsey M., they entered into a marriage contract, which secures to the heirs and descendants of said Lunda Lee all the property that the said Williams should receive from him, with its increase, in case his intended wife should have no lawful issue from said marriage: that the said Williams also executed a bond in the penalty of fifteen hundred dollars, conditioned that if the said Betsey M. should die without issue, the said Williams would return the property to said Lee, his heirs or assigns; and that thereupon the said Lunda Lee delivered to him a number of negroes, the same named in the marriage contract and bond, and that the negroes and their increase are now worth $4,000. The bill also alleges, that Lunda Lee left a will at his death, in 1837, by which he bequeathed to the said Betsey M. two negroes, which, upon her death without issue, are to go to his executors, and to be by them sold and divided amongst the said Lee's grandchildren, and by which he also bequeathed certain property to his widow, Pleasant Lee; and that the said Pleasant Lee died in 1838, leaving a will, by which she bequeathed eleven negroes to the said Betsey M. during her natural life, and to her children, if she has any, after her death, and if she should die without children, then to the children of the said Nancy H. The bill further alleges that the said Betsey M. has been married thirteen years, has never had issue, has reached the age of forty-three, and is in delicate health, and probably never will have any children: that complainants are minors, without other pro-

tector than a father near fifty years of age: that there are eighteen negroes and other property in the possession of Williams Coxe and Betsey M. his wife, acquired by them under said marriage contract and wills, and which in all probability, at some future time will belong to them: that said Williams Coxe is only related to them by marriage, is a stranger to them in feeling, and that they have no security whatever for the delivery of the property, when they may become entitled to receive it: that said property may be wasted, scattered in divers places, or transferred to other persons, and complainants be compelled to search for the same in distant States: that although Williams Coxe may at this time be in good circumstances, and sufficiently responsible, yet they have no security that he will permanently remain in this country, but he may emigrate to some distant country, as many daily do, and the possession of so large a property held on so uncertain a contingency is a great inducement to him to do so; and that he has been dissatisfied with the provisions of the two wills, contrary and vexatious in respect to the business of the estate, and has threatened that in case he was interrupted or interfered with by complainants in relation to the property, he would pay the amount of the $1500 bond, and so place the property as that it would be beyond the reach of complainants. The prayer of the bill is that the said Williams Coxe be decreed to give security, &c.

The defendant Williams Coxe answered the bill, and among other things, denied that the complainants had any interest, claim or title in and to the negroes embraced by the marriage contract, and appended a copy of said marriage contract, which recites that "whereas said Betsey M. Lee is possessed in her own right of a considerable estate in negroes," &c., the said Betsey M. Lee doth bargain, sell and deliver, &c: "To have and to hold," &c. "for the sole and separate use of the said Betsey M. Lee during her life, and at her death, to the use of the issue of said marriage, should there be any: provided, the said Betsey M. Lee may make and execute a last will and testament," &c. Whereupon, the complainants filed an amended and supplemental bill, wherein they allege that the marriage settlement was executed under the circumstances set out in the original bill, that the same was entirely

waived, and the slaves received and held by said Williams Coxe and wife, not subject to the marriage settlement, but under and subject to the bond, and that he denies that they have any reversionary interest in the property, claims it absolutely as his own and adversely to complainants, &c.

The Chancellor dismissed the bill for want of equity, which is now assigned as error.

BYRD, for plaintiffs in error:

1. The rule in England was formerly to require of the tenant for life of personal property security for the reversion, without showing that the reversion was in danger. Our court has never decided to the contrary of this, and there is every reason, growing out of the character of our population and the wide extent of our country, why the rule should be maintained here.

2. But if it be determined that a bill *quia timet*, to protect a reversion in personal property, will not be entertained by our Courts of Chancery, without showing that the reversion is in danger, then it is contended that the reversion is in danger—1st, from the condition of the parties; 2d, from the conduct of the tenant for life in holding adversely, and his threatened intention to defeat the reversion; 3d, from the nature or age of the title in reversion—and there is peculiar danger from this source.

Plaintiffs in error refer to Lewis v. Hudson, 6 Ala. 463; Nations v. Hawkins, 11 Ala. 859; Walker v. Miller, 1067; 1 Hill's Ch. Rep. 44, 74, 137, 157; 1 Story's Jurisp. 609; ib. 168; 2 Paige's Rep. 123.

BOLLING and SAFFOLD, for defendant:

Liability to abuse trust is no ground for injunction; neither is temptation to abuse it. Glassington v. Thwaites, 1 Sim. & Stuart 124; Lewis and others v. Hudson and others, 6 Ala. Rep. 466, and cases cited.

Generally speaking, where the testator thinks proper to repose a trust, in such a case, until some breach of that trust is shown, or at least a tendency thereto, the court will continue to intrust the same hands, *without calling for any other security than what the testator has required.* Slanning v. Style, 3 Peere Wms. 336, 337.

In general, a bill of peace cannot be sustained, until the parties have ascertained their rights at law. Gunn v. Harrison, 7 Ala. Rep. 585; Colburn v. Broughton, 9 Ala. Rep. 351.

Supplemental bills should be sworn to. Bowie v. Minter, 2 Ala. Rep. 412.

The court will not allow amendments, by inserting facts known to the plaintiff at the time of filing his bill, unless some excuse is shown for the omission. 1 Daniel's Ch. Pr. 455, note 2; Whitmarsh v. Campbell, 2 Paige 67; Prescott v. Habbel, 1 Hill's Ch. 217.

DARGAN, J.—In order to entitle a remainder-man to demand security of him who has a life estate in the chattel, that it shall be forthcoming when he in remainder shall be entitled to the possession, it must be shown that there is danger of waste or deterioration to the chattel, in the hands of the party who has the present interest, or that it will be removed from the country, so as to render it uncertain whether the remainder-man can obtain possession at the determination of the estate of him who has the present right. The rule formerly was, that he who had the remainder could in all cases apply to equity, to obtain security from him who had the life estate, that the property should be delivered to him when he became entitled to possession; and it was not necessary to show either waste or danger of waste, to entitle him to this relief. This rule, however, has long since been abandoned, both in England and the United States, and the remainder-man must now show danger to his interest, before he can obtain security for the delivery of the property, when he shall be entitled to possession. Lewis v. Hudson, 6 Ala. 462; 2 Story's Eq. 140, 141; 3 Randolph, 397; 2 Paige, 132. This principle, which is now recognised by all Courts of Chancery, shows that the complainants are not entitled to the relief they seek. The bill, it is true, states that the property may be scattered, or that the defendant may remove from the State, and that complainants have no security for the property when they shall be entitled to receive it. These allegations might be made in every bill, but they do not afford a ground for relief, for equity can only interpose when some facts are alleged which induce the Chancellor to believe that injury or loss will befal the remainder-

14

man without his aid, requiring the present possessor to give security.

But it is contended, that the complainants are entitled to the relief prayed, as to the slaves embraced in the marriage contract between the defendant and his wife, because he denies the right of the complainants to them in his answer to the original bill. .It is not necessary to decide whether the assertion of the absolute title by him who has the present right will entitle the remainder-man to apply to equity to protect his rights; for the allegations of the original and. supplemental bills, in connection with the exhibits on which the complainants- claim title, do not show that the complainants have such a title as will enable them to demand security. We do not wish to be understood as determining that the complainants may not have a title in remainder to those slaves; but the bond set out in the original bill, together with the marriage contract, without other allegations or facts in connection with them, do not show a title in the complainants to the slaves embraced in the marriage contract, either in remainder or otherwise.

There is no error in the decree, and it must be affirmed.