[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 85 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 86 
The principal questions which arise in this case are: First. Whether the legacy bequeathed to "The Theological Seminary of Auburn" is valid as a testamentary bequest; Second. Whether the plaintiffs' charter authorizes them to take and hold the legacy, and execute the trust created by the gift; and, Third. Whether the defendant, as surviving executor of Daniel Kellogg, is liable to pay the legacy to the plaintiffs? The validity of the legacy is denied, upon the ground that it is limited to take effect on a contingency which is too remote, viz., an indefinite failure of issue; and, also, upon the ground that the legacy is repugnant to the previous absolute estate given to Chloe Hyde; and upon the ground that the power conferred upon her guardian, to apply all or any part of the testator's estate, as he shall deem necessary, for her maintenance, education and support, is repugnant to the bequest of such legacy. Neither of these objections to the validity of the legacy is well taken.
A will is to be so construed as to render, if possible, every part of it effective; and, in such construction, the intention of the testator must govern, in all cases, where effect can be given to it without violating the rules of law. It cannot be denied that the words in a will, made before the adoption of the Revised Statutes, "dying without lawful issue," standing alone, imply an indefinite failure of issue, and that, when *Page 87 
employed in a devise of real estate as descriptive of the event on which such estate is limited over, they create an estate tail in the first taker, which the statute of entails would turn into a fee simple; and, in a bequest of personal estate, would give the first taker an absolute property therein, and that the estate limited over would be void, because limited to take effect on a contingency too remote. But where the testator has used language in his will which indicates that he meant, by the words "dying without lawful issue," issue living at the death of the first devisee or legatee, and not an indefinite failure of issue, then the devise or bequest over, limited to take effect on such failure of issue, will be valid as an executory devise or bequest. (20 John., 483; 16 id., 382, 435, 436; 2 Cow.,
333, 392; 10 Paige, 151; 4 Kent's Com., 277, 278; 3 Ker.,
280.) It seems that, in bequests of personal property, the American cases have relaxed the rule implying an indefinite failure of issue as applicable to devises of real estate, and have authorized the laying hold of slighter circumstances, in such bequests, than are allowed in devises of real estate, to limit the words "dying without issue" to issue living at the death of the first taker. (4 Kent's Com., 282, 7th ed.) I think, in this case, that the testator has used language which indicates that he intended, by the words "dying without lawful issue," issue living at the death of Chloe, and not an indefinite failure of issue. He gives and bequeaths, on the death of Chloe without lawful issue, unto "The Theological Seminary of Auburn" the sum of $10,000, c., "to be paid to the said trustees, in four equal annual payments, after the death of the said Chloe." These words indicate an intention that the legacy is to take effect on her death, or not at all; for it is to be paid in four annual payments after her death; that is, the legacy is to vest on her death, and the time of its payment is to be computed from that event. The legacy is therefore not void because limited on the happening of a contingency which is too remote. The legacy is not void because repugnant to the previous *Page 88 
absolute estate given to Chloe. It is a familiar and well settled rule, that an executory devise may be engrafted on a previous devise in fee. It is this circumstance which distinguishes contingent remainders from executory devises. (3 Kern., 285.)
Neither is the legacy void on the ground of the power conferred in the will upon the guardian to apply all or any part of the testator's estate, as he shall deem necessary, to the education and support of Chloe. There is no such repugnancy between this provision and the bequest of the legacy as to require the sacrifice of the latter, in favor of the former, upon the ground that it is evidence of the latest intention of the testator. The rule which sacrifices the former of several contradictory clauses is never applied, except where they are totally irreconcilable and cannot possibly stand together. In such cases, to prevent the invalidity of both provisions from uncertainty, the one last in local position will prevail, as denoting a subsequent intention. (2 Paige, 129, 130; 1 Jarman on Wills, 411, 412, 415, 416.) In this case, the two clauses are not totally irreconcilable. The provision conferring power upon the guardian to apply such portion of the testator's estate, in the support of Chloe, as he may deem necessary, is not an absolute disposition of the whole estate in favor of the guardian, nor does the provision confer upon him the power to dispose of the whole estate, if he thought proper to do so. The power actually conferred was merely that of expending so much of the estate as was necessary for the support and education of Chloe, during her minority; a power no greater than that which he, as guardian under the direction of the court, would have had at common law. The amount of the estate was sufficient to apply all that was necessary for the support and education of Chloe, without interfering with the bequest of the $10,000 to "The Theological Seminary of Auburn." Under the will, the guardian had no power to expend, for the support and education of Chloe, any greater amount of the estate than was necessary *Page 89 
for that purpose, and the power to do this expired with her minority. No absolute power is given to the guardian to dispose of the whole estate. The large amount of the estate is evidence that the testator did not intend that the guardian should expend the whole estate, so as to defeat the legacy of $10,000.
The plaintiffs' charter authorizes them to take and hold the legacy for the purpose mentioned in the will. It declares that they shall be "capable in law of taking, purchasing, holding and conveying, both in law and equity, real and personal estate,"c., and gives them, the trustees (§ 3), the management of such estate, and power to sell and dispose of the same for the purpose of benefiting the funds of the institution, and of applying the avails of such funds to the purposes of the institution. The purpose of the institution, as declared in the preamble of the act, is the completion of the education of pious men for the gospel ministry. Section five provides for the appointment of tutors and professors of the institution. The testator gives the legacy in express terms "for the purpose of endowing a professorship in the seminary." This object is undeniably within the principal purpose of the institution, and an indispensable means to accomplish such purpose. The invalidity of the objection, that the bequest to the plaintiffs creates a perpetuity, is decisively established by the case of Williams
v. Williams (4 Seld., 526). In that case it was decided that the provisions of the Revised Statutes, in relation to the accumulation of personal property, and to expectant estates in such property (1 R.S., 773, 774), do not apply to or affect property given in perpetuity to religious corporations incorporated under the general statute. The powers conferred upon the plaintiffs in their charter are as extensive as those conferred upon such corporations, and the object for which it was granted, viz., "pious uses," belongs to the same class of objects for which religious corporations are authorized by such general statute to be created. *Page 90 
I think that the defendant, as surviving executor of Daniel Kellogg, is liable to pay the legacy to the plaintiffs. The jury find specially that Daniel Kellogg, the executor of David Hyde, did not keep the funds of the estate of Hyde separate from his own private funds; and that they were absorbed in his own estate, and passed as such into the hands of his executors. There being a large surplus of the estate of David Hyde, after payment of debts and legacies, and over and above a sufficient amount necessary for the support and education of Chloe Hyde, it was the duty of Daniel Kellogg to have set apart, and invested in permanent securities, $10,000 of the funds of the estate, and to have paid the income to Chloe Hyde during life; to the end that the principal, on the happening of the contingency stated in the will, viz., the death of Chloe without issue living at her death, might be in a condition to be paid over to the plaintiffs. (2Paige, 132; 2 Barb. Ch. R., 214.) The omission to do this was a neglect of duty. This neglect of duty on the part of the executor, in connection with the mingling of the funds of the estate of Hyde with his own private funds, and allowing them to be absorbed in his own estate, would have made him personally liable for the payment of the legacy to the plaintiffs, had he survived Chloe Hyde. This personal liability of Daniel Kellogg, and the passing into the hands of his executors the assets of Hyde, as a part of his own estate, are sufficient in law to create a direct liability on the part of such executors to pay the legacy to the plaintiffs. Besides, I think that Daniel Kellogg, in contemplation of law, held $10,000 of the estate to satisfy the legacy to the plaintiffs as trustee for them and Chloe, and not as executor. After all the debts and legacies were paid his duties as executor substantially ceased, and his duties as guardian and trustee supervened. Besides, assets of David Hyde, out of which the legacy to the plaintiffs is payable, are in the hands of the surviving executor of Kellogg, and I can see no good reason why he should not, in this suit, be directed to apply *Page 91 
them in payment of the legacy. For these reasons I think that the plaintiffs have a remedy against the executor of Daniel Kellogg for the recovery of their legacy, and that it is unnecessary that letters of administration de bonis non, on the estate of David Hyde, should be taken out, in order to furnish the plaintiffs a remedy for the recovery of such legacy.