## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### NEVILLE v. DULANEY'S EX'ORS.

April 13th, 1893.

WILL—*Construction—Debt of legatee.*—Testator bequeathed various lega-
   cies, and directed that " all of the legacies be paid and delivered
   \*  \*  \*  without deductions of any kind, \*  \*  \*  and that no
   charge be made against any of my legatees by reason of any money
   passing from me to them at any time prior to my death." Among
   the legatees was N, his brother-in-law, to whom he bequeathed a
   pair of rifles. N owed him $5,000, upon a promissory note past due
   before the will was drawn. In action to enforce its payment—
HELD:
      The debt was forgiven and cancelled by the will.

Error to judgment of circuit court of Loudoun county, ren-
dered at its January term, 1892, in an action wherein H. G.
Dulaney's executors were plaintiffs and Robert Neville was
defendant. The judgment being adverse to the defendant, he
obtained a writ of error and *supersedeas.* Opinion states the
case.

*Lee & Janney,* for plaintiff in error.

*R. Taylor Scott,* for defendants in error.

LACY, J., delivered the opinion of the court.

The executors of H. G. Dulaney, deceased, brought an
action of debt against the plaintiff in error, on his note, dated
November 12, 1882, for $5,000, payable five years after date.
The suit was instituted on the 29th of September, 1891, to

which the defendant, Neville, pleaded *nil debit*. The case was submitted to the judge of the court, neither party requiring a jury, and the note being produced, and the will of H. G. Dulaney being offered in evidence, the court rendered judgment for the plaintiffs against the defendant; whereupon the case was brought to this court on a writ of error.

The defense of the defendant to the action is, that by the will of H. G. Dulaney the said debt had been released and forgiven. It is proved that the consideration upon which the note was given was a loan of money by H. G. Dulaney in his lifetime to Robert Neville, who was his brother-in-law.

The language of the will, which is relied upon by the said Neville to sustain his claim that the debt had been forgiven and released by the testator, is as follows:

" 18th. I direct that all the foregoing legacies be paid and delivered to the persons named as speedily as practicable, and without deduction of any kind, it being my wish that all charges, taxes, and dues of every kind thereon shall be paid by my executors, *and that no charge be made against any of my said legatees by reason of any money passing from me to them at any time prior to my death.*"

In the will a large number of legatees are named, the amount of their legacies varying in amount from $100 to large sums, exceeding $100,000, and an estate is disposed of, as is stated, amounting to a million and a quarter of a million of dollars. Mr. Neville, one of the brothers-in-law, is named among these, and his legacy is a pair of rifles, to be chosen by the said legatee. The wife of Neville is bequeathed $50,000, to be held in trust, and $50,000 without restrictions.

There are other legacies, similar in character to Neville's, to other relatives and connections, such as a pair of shot-guns to one, riding horses and driving mares and a share in a mare (these named), and in the case of a share in a mare the sum of $500 in money is added. How many of these, if any,

were indebted to the testator for money passing between them during the life of the testator, other than the case of Neville, we are not informed. But the insistance of the executors is that Neville had only a specific legacy of a pair of rifles, and no pecuniary legacy, and that the gift of a pair of rifles was no ground for the release of a debt of $5,000, with many years' interest; and say that the testator could not mean, by the language of the 18th item of the will, that a specific legacy of a rifle to Mr. Neville cancelled the note for borrowed money taken by his agent, Col. Herbert, more than six years before the will was made, and that it had no reference to the legacy of the rifles; that both Mr. Dulaney and the draughtsman of the will knew the terminology of the profession, and were familiar with the words and phrases necessary to give or discharge debts; and cite the 17th clause of the will to show this, which is:

" I hereby exempt and release Harry S. Belt from all personal liability to make good to my estate, if then unpaid, the debt due me by Samuel E. Egerton, which he (Harry) assigned to me in part settlement of accounts between us, and direct my executors to look solely to the said Egerton for collection of H. S. Belt's indebtedness aforesaid to me."

The object of this 17th clause is to release Belt as guarantor from any obligation by reason of the assignment. Belt was a legatee, but the object of the testator was not to return the note to Belt, which was a debt growing out of money which had passed between them doubtless, but to use language which would show that this debt was to be collected, but not out of Belt, notwithstanding its origin and foundation was the money which had passed between them, which, under certain conditions, diligence, &c., might be required of him, upon the failure of the debtor primarily bound.

And so this clause is aptly drawn and expressed to carry out his intention as is therein set forth.

Accepting the assurance that the testator and the draughtsman were both persons learned in the law, and knew how to express themselves with precision, we look to the 18th clause, which is drawn by a learned lawyer, to express the will of another learned lawyer, and we find the same terseness and precision. We may well look to the language used for a complete and precise expression of the will of the testator.

It is agreed on all hands that when these lawyers undertook to put down on paper what they wished to express they knew thoroughly well how to do it. When, therefore, the word "legatee" is used to refer to persons previously named in the will, must we not understand that it refers to all persons who are such? Was not Mr. Neville a legatee—as distinctly so as any other person named in the will? He had been mentioned as such in the few lines preceding the 18th clause. Did not these lawyers know that he was such? Will any person contend that if Mr. Lemmon, the alleged draughtsman, a learned lawyer, or the testator himself, a lawyer, had been asked the question, then and there, whether Neville was a legatee under the will, they could have replied, no? If he was a legatee, then, and the intention of the testator was to include him in the clause we are considering, was it necessary to use any other word or words than those he did use? On the other hand, if he intended to exclude him, and those situated in like manner, did he not know how to do it? The business was in hand by learned lawyers. If the will included several kinds of legatees, and they wished to refer to one kind only, or to exclude one kind only, can we doubt that they would have employed apt terms to carry out this wish?

It is insisted by the defendants in error that the testator referred to pecuniary legacies only. If so, why not say so? "No charge is to be made against any of my said [pecuniary] legatees for any money passing from me to them at any time during my life." Mr. Neville would not have claimed that he had a pecuniary legacy, and no dispute could have arisen.

The testator knew that $5,000 had passed from him to Neville during his life, and that it had not been paid. He knew that it had passed, because, although the money was lent by the agent and banker, Col. Herbert, it was not lent by Herbert in the ordinary course of business in his bank, but by the *special direction of Mr. Dulaney*, and on five years' time. It is a reasonable presumption that the testator knew that it was unpaid, because it was an overdue negotiable note, and the forbearance on its collection was out of the line of ordinary business transactions, and this course was doubtless due to the special directions of the creditor. It is possible—indeed probable—that these facts were unknown to the draughts-man of the will, and he is one of the executors, and one of the plaintiffs in this suit. And he, having no knowledge of the Neville debt, and, therefore, no intention of referring to it, did not understand the 18th clause as releasing this debt, and so brings this suit to settle the question, being so required by the parties in interest.

Why the testator did not mention the Neville debt to the draughtsman of the will is probably that it was the debt of a near and dear connection—his brother-in-law—of whom he is stated to have been very fond. The draughtsman was another brother-in-law, and under these circumstances it was not necessary and not pleasant to speak of it.

But if the testator had said to the draughtsman, " My bro-ther-in-law, Neville, who is a legatee named under this will, is indebted to me in a large amount, for money loaned to him, which I do not wish to give up to him," who *can* believe that Mr. Lemmon would have relied on the language *used* to carry out the intention of the testator ?

Reliance is had on the character of the language employed. "*Passing*" is in the present ; the money loaned to Neville had passed. But this overlooks the fact that the word " pass-ing " does not stand alone, to indicate the present time alone, but is coupled with these words : " At any time prior to my

death." "Any money passing from me to them at any time prior to my death," used in a will, takes effect when the will does, and that takes effect and speaks as of the time immediately before the testator's death. Then " passing from me to them at any time prior to my death " covers, by an ample phrase, the whole period of the testator's life. This money did pass during the testator's life to Neville, and Neville is a legatee. This suit is an endeavor, on the part of the executors under the will, to charge this legatee, Neville, with this money so passing, and was a wise precaution on the part of the executors, in the exercise of their fiduciary duty, it being differently construed by parties in interest, and suit being necessary to settle the question; but it is in plain violation of the testator's will, clearly expressed, and cannot lawfully be sustained. This gift to Neville, one brother-in-law, is in excess of the benefaction to Lemmon, another brother-in-law, (the executor and the plaintiff,) and is unequal, unless the office of executor shall be compensation. But it was the property of Dulaney, and he had the right to dispose of it as he wished, and his will must be respected in this respect as in all others which are lawful.

There is no recognized rule of construction by which we can disregard this provision altogether, or amend it so as to limit either its terms or its application beyond the plain meaning expressed.

The intention of the testator, sought for in the whole will taken together, is clear. The debt of Neville is not released because of the gift of a pair of rifles, but because the testator has used terms which include him, and directs that no charge shall be made against him for this debt, which operates a release as completely as any words could do it.

It is a rule of interpretation not to be overlooked that the construction should be of the entire instrument, and not merely upon disjointed parts of it, so that every part of it, if possible, shall take effect.

The first and cardinal rule in the interpretation of wills is to seek and follow the intention of the testator, and, when this can be discovered, it is to be followed as the polar star, if consistent with the rules of law; and when this is clear, too much stress must not be laid on the strict signification of the words.

As was said by Lord Redesdale in a case often quoted (*Jesson* v. *Wright*, 2 Bligh. 56): "There is such a variety of combination in words, that it has the effect of puzzling those who are to decide upon the construction of wills. It is, therefore, necessary to establish rules, and important to uphold them, that those who have to advise may be able to give opinions on titles with safety." See, also, *Copenhaver* v. *Shuler*, 2 Paige 122, opinion of Chancellor Walworth. "The great and leading principle in the construction of wills is that the intention of the testator, if not inconsistent with the rules of law, shall govern, and that intent must be ascertained from the whole will taken together." *Price* v. *Coke's Ex'x*, 83 Va. R. 345, and cases cited.

In this case, however, there does not seem to be any need for the office of construction, where all is so plain. As we have said, if the words used are followed, and none added, and the plain intention as expressed in the will be obeyed, there is no doubt of the true solution of the question, and no charge can be made against Neville on account of his debt, which was for money lent to him by Dulaney some time during his life, because no charge is to be made against any legatee, and he is a legatee.

The circuit court of Loudoun decided otherwise, and we think its judgment is erroneous, and the same must be reversed and annulled. And this court will render such judgment as the said circuit court ought to have rendered.

JUDGMENT REVERSED.