(Surrogate's Court, Westchester County. March, 1896.)

1. TRUST—EXECUTORS AS TRUSTEES.
   Executors who are given the legal title to real estate in trust hold as trustees, and not as executors.

2. SAME—COMMISSIONS OF TRUSTEES—REAL ESTATE.
   Executors who are given power to sell real estate are charged with no duty with respect to it which entitles them to a commission on its value, unless a sale is made; but where, as trustees, they are given the legal title, and charged with the care and responsibility of its management, they are entitled to commissions on its fair value as well as on the rents.

3. SAME—TAXES ON TRUST PROPERTY.
   Where property devised in trust with power of sale and reinvestment, the income to be paid to life tenants, is unproductive real estate, which is held by the trustees because appreciating in value, the ordinary taxes on such property should be charged to principal, and not to income.

Accounting of the executrix and executor of the will of Gerd Martens, deceased.

Isaac N. Mills, for the trustees.
Arthur M. Johnson, for Loretto J. Martens, guardian.
Stephen Lent, special guardian.

SILKMAN, S. Two questions are presented by the special guardian for determination before the entry of the decree: First, is the real estate to be included in determining the value of the several trust estates for the purpose of computing trustees' commissions thereon? And, second, are the taxes upon the unimproved and unproductive real estate which is appreciating in value properly chargeable to principal? The testator, by the fourth clause of his will, gave to his executors and trustees all the residue of his property, real and personal, in trust to divide the same into five equal parts, which they were directed to invest and reinvest in productive real and personal property, to receive the rents, income, and profits of each of said shares, and, after deducting the necessary and proper taxes, insurance, premiums, expenses, or repairs, commissions, costs, charges, and expenses, to use and apply and pay the net rents, income, and profits of one of such shares to each of his five children during life; and upon the death of any of such children the share represented by the child so dying to be paid to his or her issue, or, in default of issue, to his or her brothers and sisters and the issue of any deceased brothers and sisters. In a subsequent paragraph of the will full power of sale was given to the executors and trustees. Under the provisions of this will the persons named as executors take the legal title to the real estate, coupled with a complete power of sale; but the title is in them as trustees, and not as executors. Whether they are to act in reference to the real estate as executors or trustees is determined by where the legal title is. Executors, as such, deal with real estate only under a power in trust, and, if they are seised of the legal estate, they then hold as trustees. Griffith v. Beecher, 10 Barb. 432; In re Van Wyck, 1 Barb. Ch. 565. Executors who are merely given a power in trust to sell real estate

have no care or responsibility in respect thereto; neither have they any right to the rents and profits thereof nor possession thereof; and, being charged with no duty except to sell, they are not entitled to commissions thereon until they shall exercise the power of sale, and convert the same. It is different with trustees. They, being possessed of the legal title to the realty, are charged with the care and responsibility thereof, and for the performance of such duties they are entitled not only to a commission upon the rents, but upon the fair value of the property as well. The rule is well settled, and wisely so, for experience proves that the care of real estate is much more onerous than the care of personal property. The personalty of the five trusts being accounted for is considerably less than $100,-000, but, adding the fair market value of the realty, that amount is largely exceeded. The executors named are, therefore, lawfully entitled as trustees to their commissions for receiving the corpus of the several trusts; their accounts as executors having been heretofore settled.

We are next brought to the consideration of the second question. It appears that the testator died possessed of certain unimproved and unproductive real estate in the city of Mt. Vernon, which has been set off and partitioned among the several trusts, and which real estate is appreciating in value, and which the trustees believe, by holding for a time, can be sold at much larger prices than can be had for it at the present time. In view of the almost certain advance in its value, and the benefit to the remainder-men consequent upon holding it, the trustees have charged the taxes thereon to principal, and not to income, as is usual. The correctness of this is involved in some doubt. It is the general rule that assessments, or taxes in the nature of assessments, for betterments to the freehold are chargeable to principal; the life tenant suffering the loss of the interest on the amount thereof. In some cases, however, when the benefit is partially for the permanent benefit of the freehold and partially for its preservation or temporary benefit, the amount of such assessments have been apportioned between the life tenant and remainder-man. It is also the general rule that all ordinary taxes for the support of the government must be borne by the life tenant. Hepburn v. Hepburn, 2 Bradf. (Sur.) 74; Griswold v. Griswold, 4 Bradf. (Sur.) 216; Pinckney v. Pinckney, 1 Bradf. (Sur.) 269; Booth v. Ammerman, 4 Bradf. (Sur.) 129; Gillespie v. Brooks, 2 Redf. (Sur.) 349. The soundness of the latter rule cannot be questioned, but that it is of universal application, and without exception, I am inclined to doubt. In these days, when so much unimproved real estate is being developed, and is appreciating in value, a premature sale would often entail great loss, while a judicious delay in sale for a few months or years would largely enhance the value of the estate. Equity would seem to require that the court make exceptions to the general rule, but guardedly, and only when the equities are clear and beyond doubt. And for this there is some authority. Cram v. Cram, 2 Redf. (Sur.) 244; In re Kendall, 4 Dem. (Sur.) 133; In re Housman, Id. 404. In the latter case Surrogate Rollins held that, where property which ought to be converted is held by executors, a ten-

ant for life is not entitled to the annual produce, but to interest at some fixed rate upon the estimated value of the unconverted property, or upon the value as it may be subsequently ascertained; and cites as authority for the rule Covenhoven v. Shuler, 2 Paige, 122; Cairns v. Chaubert, 9 Paige, 160; Spear v. Tinkham, 2 Barb. Ch. 211; Lawrence v. Embree, 3 Bradf. (Sur.) 364. The learned surrogate also said: "Delay in making the conversion directed by the will should not inure to the advantage of the beneficiaries for life as against the remainder-men, or to the advantage of the latter as against the former, but to the advantage of the estate as a whole; and the equities should be adjusted between the successive takers;" and cites Beavan v. Beavan, 24 Ch. Div. 649, note; People v. Davenport, 30 Hun, 177. It must be borne in mind that the intention of the testator in such a case as this is to benefit his children, the life tenants, who are his first consideration; and the fact that he leaves the estate in trust, and gives to his children only the income, is not so much because he desires their issue, in whom he may have no particular interest, to be benefited, but that his children shall always have support and maintenance, and something to constantly remind them of a provident parent. It never could be that a father should intend that his children should live in discomfort and distress in order that unproductive and speculative real estate may be held to appreciate for the benefit of a third or fourth generation; and yet such might well happen if the general rule stated above is without exception. The surrogate's court being a court of equity, it must see that equity is done, and that the clear intentions of a testator are fulfilled; and where it appears that unproductive and unimproved real estate having a prospective value is carried by trustees in the exercise of a sound discretion for the benefit of the remainder-men, the expense of carrying it is to be charged to the body of the trust estate, and not to the income of the productive property or securities. In this case the trustees are directed to invest in productive real and personal property,—a clear intention that the unproductive property shall not be held. If, however, it is held for a reasonable time in the exercise of a sound discretion which the law gives to trustees, in order to obtain better prices, it is for the benefit of the remainder-men, who will receive the larger benefit from the enhanced value; and they must, therefore, bear the expense of carrying it, including the annual taxes, the life tenants suffering only the loss of the income upon the principal so used. Both propositions must be answered in the affirmative, and a decree entered accordingly.

Decreed accordingly.