GRIFFITH. adm'r, &c. appellant, *vs.* BEECHER, respondent.

An interest in a contract for the purchase of land is real estate, and descends to the heirs of the purchaser.

And if the administrator of the purchaser receives *rent* for such land, accruing after the dea.h of the intestate, he is bound to account for it, as well as for the amount received by him upon a sale of the intestate's interest in the land.

An administrator has no power over the land and real estate of the decedent, any further than the statute has given it to him. Hence, he has no control over a contract for the purchase of real estate, which will authorize him to deliver the same to a judgment creditor, with a view of having it disposed of, and realizing money upon it.

But notwithstanding an administrator has mistakenly supposed that such a contract, and the rents of the real estate, were *assets,* and acting on that assumption he has actually paid some simple contract debts, out of the same, he will not be thereby estopped from insisting, when called to account by a simple contract creditor, that the moneys thus received were *not* assets.

It is a general rule that only parties, or privies in blood or estate, can avail themselves of an estoppel. Strangers can not do it.

Admissions and conduct operate as estoppels, only when they are *designed to* influence the conduct of another, and *actually have that effect.*

A creditor, calling an administrator to an account, can not recover costs unless he obtains a dividend; nor will an administrator be charged with costs, unless he has been in fault.

THIS was an appeal from a decree of the surrogate of Oneida county, upon the final accounting of administrators. On the 14th of July, 1849, Matthew Beecher, a creditor of the decedent, applied to the surrogate for a citation, calling the administrators to an account. On the fourth of September following, the parties appeared before the surrogate, and the creditor proved his claim, to the amount of $24,44, and the further hearing was adjourned to the 7th day of November, 1849, when the administrator was allowed, by the surrogate, to file an amended account; whereupon the further hearing of the cause was adjourned to the 29th of January, 1850. At the adjourned day the parties ap-

Griffith *v*. Beecher.

peared, and the evidence was taken on which the decree was based. It appeared that there was a sum of $110,11 applicable to the payment of debts ; that the judgments against the decedent, surrogate's fees, funeral expenses and administrator's fees and expenses, amounted to about 1500, and simple contract debts existed to the amount of near $400. It further appeared that Thomas, when he died, held a contract for the purchase of about 90 acres of land, at $5 per acre, payable in five years with annual interest, and that the amount due on this contract was, on the 17th of June, 1848, $566,15. After the death of Thomas, the administrator delivered this contract to one Heman Ferry, (to whom a large judgment was due from the estate,) with the view of having it disposed of, and realizing the greatest amount for it. The land was worth some $2000, and one L. P. Lewis actually paid that sum for it. The money arising from this sale satisfied Ferry's judgment in full ; the amount due on the contract, and left a balance of $551,85, which was paid to the administrator. This sum he had ignorantly applied in payment of debts, supposing that the sum so received was assets. The surrogate decreed that there was a balance of $378,08 in the hands of the administrator, for distribution among the simple contract creditors of the intestate ; charging the administrator with the rents received from the real estate, and the surplus arising from the sale of the land contract. He also decreed that the administrator should pay, individually, to Beecher, the amount of his dividend, $13,47, and the costs of the proceedings. From this decree, Griffith, the administrator, appealed.

*Wm. Tracy*, for the appellant.

*Wm. J. Bacon*, for the respondent.

*By the Court*, GRIDLEY, P. J. The question here is, whether the proceeds of the contract were assets ; or if not, whether the administrator was estopped, as against the cred-

itor, who was a simple contract creditor, from setting up that they were not.

I. Upon the first question, there can scarcely be a doubt entertained. The contract bears date August 20, 1844, and Thomas died in the spring of 1845. The land was occupied by the family of the deceased, and was afterwards rented for two years by the administrator. The interest in the contract, which was about $1400 over and above the money due upon it, was real estate, and descended to the heirs. (*See Champion* v. *Brown*, 6 *John. Ch. Rep.* 398; 1 *Id.* 119, 130.) Again, the statute (2 *R. S.* 82, § 6) points out explicitly what are assets, and land contracts are not enumerated; while section 8 declares, that the right of the heir, to any property not enumerated in the 6th section, shall not be impaired by the general terms of the section. The enumeration of the several classes of assets in the sixth section, is very carefully worded, and almost the whole of it has been the subject of legal adjudication. (*See* 3 *R. S.* 639, *note to sub.* 6.)

II. But the administrator had received the balance of the proceeds of the real estate, and had already paid some debts out of it, and the surrogate has supposed that the creditor was induced to call him to account by reason of his conduct in relation to this surplus, and therefore that he should be held to be estopped from denying that it was assets to be administered.

If we are right in considering the contract as real estate, the administrator had nothing to do with it. An administrator has no power over the land and real estate of the decedent, any further than the statute has given it to him. It has even been held, that an executor, who is specially authorized to deal with the real estate, by the will of the testator, acts as a *trustee*, and not strictly as an *executor*. It is sufficient to say, that the statute has given the administrator no authority over the real estate, to dispose of it as was done in this case. Mr. Ferry had a judgment against Thomas; but that gave him no power over the real estate held by the contract. The judgment was not a lien on it; nor could it be sold on execution. (3 *Paige*, 219. 6 *Hill*, 525.) Mr. Ferry, in his testimony, says that Thomas

---

Griffith *v.* Beecher.

---

never gave him a lien on the land; (other than the judgment;) that the contract was never assigned to him; and that he had the contract but a short time; that when Lewis purchased the farm he assumed the payment of the contract and judgment, and as to the balance of the proceeds he (Ferry) had nothing to do with them, and gave no directions about them. Clearly, therefore, there is nothing in the circumstance of the disposition of this contract, which should impose on the administrator an obligation to regard the proceeds as assets; but the landholder recognized its existence and validity, and actually gave a deed in performance of it. The contract, therefore, was an actual interest vested in Thomas at his death, and in his heirs afterwards. The only person who had any shadow of right to declare it void, having affirmed it, the attempt to regard it as having been lost to the heir by forfeiture, can not prevail. (*See Armour* v. *Alexander,* 10 *Paige,* 572; 5 *Id.* 279.)

The inquiry now arises, how the administrator is estopped from setting up the truth in relation to this surplus? Is it because he has mistakenly supposed it was assets, and acting on that assumption has actually paid some creditors who had no legal claim to be paid out of it? For all that he has thus paid out to creditors he is directly responsible to the heirs. And is it to be tolerated, that because he has already subjected himself to a considerable liability to the heirs, under a mistaken idea of his duty, he is to be compelled by other creditors to go on and increase that liability? Has this creditor been induced to part with any property, or right, relying on any assurance of the administrator? Is it true, that when an administrator pays one demand of a creditor, under a mistake, he is bound to go on and pay all the creditors? This would be enlarging the doctrine of estoppel to a dangerous extent. No authority has yet gone so far. On the contrary, it is in direct hostility to the well understood principles of estoppel. It is a general rule that only parties or privies in blood or estate, can avail themselves of an estoppel. Strangers can not do it. (3 *John. Cas.* 101.) Again, in 8 *Wend.* 483, admissions and conduct are said to operate as estoppels, only when they are *designed* to influence the conduct

of another, and *actually have that effect.* And this qualification of estoppel *in pais*, is expressly recognized by Bronson, justice, in *Dezell* v. *Odell*, (3 *Hill*, 215.) In this case it does not appear that any money was ever paid *to* Beecher, or in his presence ; or that he ever took any action by reason of these mistaken payments, to call the administrator to account. A man may admit his signature, or even promise to pay a note, and still defend a suit brought on it, for want or illegality of consideration, unless he has made this statement to some one who has purchased or advanced money on it, relying on the assurance. (21 *Wend.* 172. 19 *Id.* 663. 1 *Barn. & Adol.* 142.) It was never heard of, that a man who paid part of a bond or note, on the erroneous supposition that it was collectable, was estopped from defending a suit for the remainder, on legal grounds. And still less is one bound to pay all the illegal claims that exist against him, because he has paid one before he discovered its illegality.

III. We dissent also from the doctrine of the surrogate, that a creditor of an estate may call the administrator to account who has fully administered, and charge such innocent administrator with the costs, both of the surrogate and creditors. We suppose the creditor can not recover costs unless he obtains a dividend ; and that the administrator will not be charged with costs unless he has been in fault.

For these reasons the decree must be reversed, and the proceedings remitted to the surrogate, with costs.

———— • ○ • ————

SAME TERM. *Before the same Justices.*