M. D. LEWIS, ADMINISTRATOR, Respondent, *v.* JAMES O. CARSON ET AL., Appellants.

### December 23, 1884.

1. ADMINISTRATION — RENTS AND PROFITS. — An administrator who has taken charge of the realty of an estate is liable on his bond for the rents and profits thereof.

2. —— DUTY TO DISCHARGE LIENS. — It is the duty of an administrator who has taken charge of the realty of an estate with the consent of the devisees, to pay the taxes and make repairs thereon.

3. —— WASTE. — In an action against an administrator and his sureties for waste, he is entitled to credit for money paid, with the approval of the probate court, to discharge liens against the estate and for which he had been given credit in his settlements with the court.

4. —— UNCOLLECTIBLE ACCOUNTS. — In such an action the administrator should, in the absence of further proof, be allowed credit for accounts returned by him in his settlements as uncollectible.

5. —— RESIDUARY DEVISEES. — An administrator need not charge himself with money received by himself and others arising from the sale of their interest as residuary devisees in land sold during the administration.

6. —— NOTICE — LIS PENDENS. — A purchaser of realty sold by an administrator without an order of the probate court. takes it with notice of pending suits and subject to claims which may be established against the estate by a judgment therein.

APPEAL from the St. Louis Circuit Court, HORNER, J. *Reversed and remanded.*

E. T. FARISH, for the appellants : The proceeds of sale of the real estate with which the administrator charges himself, are not assets.  The rents collected by him are strictly in the same category, since he is liable to the devisees for these rents. — *Ferguson* v. *Carson*, 13 Mo. App.

29; *Rodman* v. *Rodman*, 54 Ind. 444–447; *Hawkins* v. *Kimball*, 57 Ind. 42; *Terry* v. *Ferguson*, 8 Port. 500; *Goodrich* v. *Thompson*, 4 Day, 215; *Griffith* v. *Beecher*, 10 Barb. 432; *Stone* v. *Zimmerman*, 21 Port. 394.

LEONARD WILCOX and H. A. HAEUSSLER, for the respondent: The Webb purchase-money was assets for which the administrator is liable. — *Dix* v. *Morris*, 1 Mo. App. 95; *s. c.* 66 Mo. 518; *Campbell* v. *Johnson*, 65 Mo. 439; *Boyer* v. *Allen*, 76 Mo. 498. The administrator properly used money of the estate to pay off mortgage debts. — *Lake* v. *Meier*, 42 Mo. 389; *Ross* v. *Julian*, 70 Mo. 209, 212; *Evans* v. *Snyder*, 64 Mo. 516; *Greene* v. *Holt*, 76 Mo. 678; *Cape Girardeau* v. *Harbison*, 58 Mo. 90; *Church* v. *McElhinney*, 61 Mo. 542. And to pay taxes on the real estate. — *Wilcox* v. *Smith*, 26 Barb. 337; *McElhinney* v. *Church*, 61 Mo. 543; *Gray* v. *Clement*, 12 Mo. App. 579; *Burdyne* v. *Mackey*, 7 Mo. 374, 375. And to pay special taxes. — *In re Motier's Estate*, 7 Mo. App. 514, 518; *Higgins* v. *Ausmuss*, 77 Mo. 351. And for repairs and insurance. — *Byrd* v. *Governor*, 2 Mo. 102; *Ritchie* v. *Withers*, 72 Mo. 559. The burden of proof was upon defendants to show that inventoried assets were uncollectible or worthless. — *Julian* v. *Abbott*, 73 Mo. 580; *In re Haffey's Estate*, 10 Mo. App. 232; *Williams* v. *Heirs of Petticrew*, 62 Mo. 471; *Folger* v. *Heidel*, 60 Mo. 288; *Wilcox* v. *Smith*, 26 Barb. 354; *Shultz* v. *Fulver*, 11 Wend. 361, 365; 3 Williams on Ex. (6th Am. ed.) 1863.

BAKEWELL, J., delivered the opinion of the court.

This was an application to the probate court by the administrator *de bonis non* of John B. Carson, to ascertain the amount of moneys and property of the estate which ought to be in the hands of the former administrator upon a legal settlement, and for judgment for such amounts against such administrator and William F. Ferguson, one of the sureties upon his bond, and for execution to enforce said judgment. The petition specially sets up seventeen

items of credits taken by the former administrator in his settlements, to which it is claimed he was not entitled, amounting altogether to $32,141.44. Ferguson filed an answer, setting up in full the facts afterwards introduced in evidence, and claiming that the estate is indebted to him for a sixth class demand, and that otherwise all debts, demands, and legacies are fully paid.

On hearing, the probate court found that the amount due by the former administrator at the date of the revocation of his letters, was $8,752.53, and rendered judgment accordingly. On hearing anew in the circuit court, the finding was for the same amount with interest, and the judgment was, therefore, for $9,080.73.

Whilst the proceeding was pending, Ferguson died, and the cause was revived against his administrator.

The testimony, with the exception of that of defendant Carson in his own behalf, was entirely documentary. The only testimony introduced by defendant was this evidence of Carson, and a deed from himself and wife and Jane U. Postlethwaite and husband to Webb.

It appears from the evidence that the will of John B. Carson was made on the 13th of July, 1866, and proved on the 6th of August following. This will is as follows : —

"I give and bequeath to my nephew, John B. Carson, my gold watch and chain ; to my niece, Ellen B. Carson, my diamond ring ; to my step-daughters, Caroline P. Smith and Ann Eliza Smith, each the sum of twenty-five hundred dollars ; to my nephew, Norman Bruce Carson, one thousand dollars ; these three legacies to be paid as soon as practicable by my executor, and if necessary for that purpose, he may sell all of my real estate to pay them. All the rest and residue of my estate, real, personal, and mixed, I devise and bequeath to my brother James O. Carson, and my sister, Mrs. James H. Postlethwaite, of Somerset, Pa., the same to be equally owned and enjoyed by them and their heirs forever. Having assigned my profits

in the business of the house of J. B. Carson & Brother, from 31st December, 1865, to my sole partner and brother, James O. Carson, I hereby direct my executor to respect that assignment, and to ask no account of the business since January 1st, 1866. I hereby appoint Judge William F. Ferguson, executor of this, my will.''

James O. Carson was appointed administrator *cum testamento annexo*, and gave bonds on the 30th of October, 1866, in the sum of $50,000, with William F. Ferguson, Cornelius Vorhies, Hugh Boyle, and William Ballentine, as sureties.

The inventory was filed in due time by the administrator. It shows that the estate consisted of the following property : Various lots and tracts of ground in St. Louis, as follows : A tract of two and fifty-two hundredths acres on Grand Avenue, in which deceased has an interest of an undivided three-fourths in fee ; one hundred and thirty feet on Washington Avenue, bounded east by Leffingwell Avenue ; one hundred and fifty feet on De Kalb Street, corner of Douchouquette ; lot 38, in block 27, Stoddard Addition, corner of Locust Street and Leffingwell Avenue, incumbered by deed of trust for $4,000 and interest. Also onethird interest in one hundred and nineteen acres on the Meramec river, and a quit-claim of all the interest of Josiah Dent in a lot in St. Louis. Also, the following personal property : —

An undivided half interest in the machinery and fixtures of the Missouri Cotton Factory and of the partnership effects of the firm of Marriot & Co. One hundred and fifty-five shares in fourteen different banks, business associations, hotels, railroads, etc. Some stock not yet issued in certain petroleum companies. The watch, chain, and ring mentioned in the will. Five promissory notes of various persons, amounting with interest to about $900. Book accounts on the ledger of deceased embracing twenty-eight names, and amounting to about $32,000.

At the March term, 1868, Carson made his first annual settlement, in which he charges himself with $17,096.33 and takes credit for $18,183 paid out, showing a balance in his favor of $1,086.67. At the September term, 1869, as we judge from the printer's bill for the advertisement, — at any rate in 1869, — Carson made his second settlement, after notice as required by law for a final settlement. This settlement was intended to be, and was accepted as, and seems to have complied with, the conditions of a final settlement. It showed a balance due the administrator of $5,636.12, upon making it the administrator was discharged. In this settlement, the administrator returns as of no value various stocks remaining unsold, and also returns as of no value all the bills payable and all the book accounts, with the exception of the account of E. C. Coulton for $565, which is stated to be "of some prospective value." The other names are returned, as to most of them, as discharged bankrupts, and, as to all of them, as entirely worthless.

The items in the two settlements may be summarized as follows : –

To proceeds of sale of 2$^{52}$/100 acres on
    Grand Avenue . . . . . . . . . $17,750 00
To received from Marriott, surviving
    partner of Marriot & Co., on final set-
    ment in probate court . . . . . 10,326 33
To proceeds of sale of stocks. . . . 4,770 00
To dividends received on stocks . . . 200 00
To rents collected . . . . . . . 1,692 59
To personalty . . . . . . . . 107 50
    The credit items may be summarized
as follows : —
By costs of probate court and adminis-
    tration . . . . . . . . . . . $99 70
By funeral expenses . . . . . . 371 00
By allowed demand of Turney . . . 88 49
By legacy tax . . . . . . . . . 457 00

| | | |
|---|---:|---:|
| By taxes delinquent . . . $157 45 | | |
| By general, 1866–7–8 . . 1,951 62 | | |
| By taxes special . . . . 1,363 52 | | |
| By taxes state and county, personal. . . . . . . 23 62 | | |
| By taxes state; income . . 123 00 | | |
| By taxes on bank stock. . . 79 90 | $3,699 11 | |
| By repairs to realty . . . . . . . | 155 95 | |
| By insurance, realty . . . . . . | 36 00 | |
| By assessment of Laclede Race Association stock . . . . . . . . . | 867 90 | |
| By assessment of other stocks . . . | 247 05 | |
| By commissions paid broker selling stocks . . . . . . . . . | 27 20 | |
| By special legacy paid Carrie Smith. . | 5,000 00 | |
| By special legacy paid N. B. Carson . | 1,000 00 | |
| By paid in full settlement of suit *Allegheney Bank* v. *Carson, deceased,* in St. Louis circuit court . . . . . | 1,191 44 | |
| By attorney's fee and expenses in same suit . . . . . . . . . . . | 295 10 | |
| By paid to extinguish deed of trust on Locust Street property . . . . . | 4,740 00 | |
| By paid to extinguish deed of trust on Grand Avenue property . . . . . | 3,100 00 | |
| By commissions on sale of Grand Avenue property — discount on notes for purchase-money and deeds. . . | 728 00 | |
| By purchase of 1/4 of Grand Avenue property of Hannon under decree of court, and recording deed . . . . | 3,001 25 | |
| By paid to Mrs. Postlethwaite as residuary legatee . . . . . . . . . | 5,900 00 | |
| By paid to James O. Carson as residuary legatee . . . . . . . . . | 7,500 00 | |
| By commissions of administrator. . . | 1,927 26 | |
| To balance carried down . . . . . | 5,636 03 | |
| | $40,482 45 | $40,482 45 |
| By balance due administrator. . . . | | $5,636 03 |

During the lifetime of John B. Carson, suit had been begun against him in the St. Louis circuit court by Ober and others, which culminated on March 30, 1874, in a judgment against his administrator. This judgment was affirmed in the supreme court of Missouri; and the cause having been, on March 27, 1876, taken by writ of error to the supreme court of the United States, the writ of error was, in that court dismissed on January 5, 1879. The original judgment was for $15,941.80, on which a credit had been entered of $10,826.00. This judgment was assigned to Glover, who, in 1879, began proceedings in the St. Louis circuit court to set aside the final settlement of James O. Carson. In these proceedings the settlement which had been made as a final settlement was set aside, and the judgment of the federal court allowed against the estate of John B. Carson for $5,114.94, and placed in the sixth class. James O. Carson was ordered to give a new bond as administrator, and, failing to do so, his letters were revoked on January 15, 1883, and, on application of James O. Carson and the other devisee of J. B. Carson, the public administrator, in obedience to the order of the court, took charge of the estate, and began the present action.

On behalf of defendant it was admitted that James O. Carson, if present, would testify that he paid the Smith and Carson legacies of $6,000, as shown by the vouchers; and also to Mrs. Postlethwaite the $5,900, as shown by vouchers; and to himself $7,500. These two payments being made to them as residuary legatees. That he deemed it his duty as administrator to pay the two deeds of trust upon the real estate, and therefore paid the notes thus secured amounting to $7,840, and obtained releases of the realty. That he paid, as per vouchers filed with his settlement, to James O'Connor, for legal services in defending suits against the estate, $1,191.44; and that, on June 18, 1867, he, James O. Carson, and wife, and his sister, Mrs. Postlethwaite, and her husband, sold and conveyed to Webb

the two and one-half acres on Grand Avenue for $17,750, as already stated. The deed to Webb was also introduced, and is a warranty deed.

This was all the testimony.

The court, at defendant's instance, gave a declaration of law to the effect that, if James O. Carson, as administrator, paid O'Connor $1,191.44 for legal services, as stated, and the same was reasonable for the services rendered, defendants are entitled to a credit for this payment.

The court refused declarations of law asked by defendants to the effect, (1) that if Carson, as administrator, paid $6,000 as special legacies, defendants are entitled to credit therefor; and (2) that "if Carson, as administrator," etc., paid and discharged liens or incumbrances on the real estate belonging to deceased, and the same was a benefit to said estate, and prevented the real estate from being sold under said liens, then these defendants are entitled to a credit for the amounts paid as aforesaid.

The court then gave judgment for plaintiff, as has been already stated.

Some of the questions which have been discussed in the briefs of counsel have already been disposed of in this court in the progress of the litigation arising out of the fact of the attempt to make final settlement of the Carson estate whilst an action against the administrator was still pending on appeal.

Ferguson having purchased the Ober judgment through the intervention of a trustee, and being thus subrogated to the rights of the plaintiff in that judgment, began proceedings by a bill in equity to subject the parcels of real estate sold by Carson and Mr. Postlethwaite, the residuary devisees, to the payment of this allowed demand. We held that the final settlement having been set aside, the probate court became repossessed of the administration of the estate, and that it is the proper tribunal to enforce a demand against the estate; and that the circuit court had no orig-

inal jurisdiction to decree that the allowed demand should be a lien on the realty ; and that the sale by the heirs and devisees of Carson did not oust the probate court of jurisdiction to enforce against the realty thus sold a demand allowed against the estate. *Ferguson* v. *Carson*, 9 Mo. App. 497.

Then an application for sale of the realty having been made by Ferguson as assignee of the Ober judgment, and having been refused by the probate court, we held that Ferguson, though surety on the appeal bond, might purchase this judgment in the name of another, and have an order of sale of realty to pay the same ; and that the sale by James O. Carson and Mrs. Postlethwaite was made under no power in the will, and passed nothing but the interest of the grantors, subject to claims against the estate ; and, further, that the administrator erroneously credited the estate with the proceeds of these sales, which were in no sense assets of the estate. *Ferguson* v. *Carson*, 13 Mo. App. 29.

The theory upon which the learned judge of the probate court went, in ascertaining the assets in the hands of the first administrator for which he was held liable to his successor, is indicated by the instruction refused, but is more fully set forth in the written opinion handed down by him on announcing his judgment (which was affirmed by the circuit court). This was made part of the briefs of counsel ; and the very high respect which every judge of this court entertains for the learning and experience, especially in matters of probate law, and for the high judicial qualities of that judge, to which I seize this opportunity of testifying in this, the last opinion to be written by me as a judge of the St. Louis Court of Appeals, — has led us to examine that opinion with great attention.

After a brief and comprehensive glance at the history of the litigation, Judge Woerner says : " The law regulating this proceeding is found in sections 48 to 54 of the Revised

Statutes, and provides that an administrator whose letters are revoked shall account for, pay, and deliver to his successor all money, real, and personal property of every kind, and all rights, credits, deeds, evidences of debts, etc., etc., at such time and in such manner as the court shall order on final settlement of such administrator. The court having jurisdiction shall ascertain the amount of money, etc., in the hands of such administrator as came into his hands and remain unaccounted for.

"Under this law it seems to be clear that the administrator removed is liable to account to his successor, not only for all assets remaining in his hands unadministered at the time of his removal, but also for all assets that he has improperly administered. That he has illegally administered or wasted the assets can not be held to show that he 'accounted for' such assets in the meaning of the above section. He is then liable in this proceeding for all assets which were once in his hands, and which are not shown to have been legally administered, that is, applied in the manner required by law. And, since the payment of legacies in derogation of the rights of creditors is a *devastavit*, he must be held to account to his successor for such amount of the legacies he may have paid as may be necessary to pay debts.

"Although the court of appeals held that the personalty was not sufficient to pay the debts, its announcement of the law is consistent with the above view. The conclusion of the insufficiency of the personalty was reached after striking out the credits for amounts paid for legacies. The decision of the court of appeals is also in consonance with the prevalent American doctrine (following the common law where not modified by statute) that, without an order of court directing the administrator to take charge of the real estate for the purpose of selling or leasing it to pay debts, it is no part of his duty or authority to meddle with it in any re-

spect. The proceeds of the sale of the real estate with which the administrator charges himself are held not to constitute assets. The rents collected by him are strictly in the same category. Since he is liable to the devisees for these rents (see *Rodman* v. *Rodman*, 54 Ind. 444, 447 ; *Hawkins* v. *Kimball*, 57 Ind. 42 ; *Terry* v. *Ferguson*, 8 Port. 500 ; *Goodrich* v. *Thompson*, 4 Day, 215 ; *Griffith* v. *Beecher*, 10 Barb. 432 ; *Stoner* v. *Zimmerman*, 21 Pa. St. 394), it would be unjust to charge him as administrator.

" It follows that, in the present proceeding, the former administrator will be held liable for all unadministered property of the estate, and for all legacies paid in derogation of the rights of creditors, to the extent to which it may be necessary for the payment of debts now remaining unpaid, and the necessary costs arising ; and that he is not liable for the rents or proceeds of sale of real estate, nor entitled to credit for expenses or disbursements in connection therewith, either for repairs, taxes (except such as arose from possession in the lifetime of the testator), or for disincumbrance.

" The items of the administrator's account which must be changed in consequence of this ruling, are : Proceeds of sale of real estate, $17,750 ; rents, $1,692.50, must be struck out on the debit side; expenses of real estate for repairs, taxes, and incumbrances discharged $14,431.85, and legacies paid, $19,400, which are to be deducted from the credit side. This will change the balance in the administrator's settlement in his favor, to a balance against him of $8,752.53, a sum sufficient to pay all the debts and expenses now due, or that will probably arise before the final winding up of the administration.

" It is not neccessary to pass on other questions suggested on the trial, because the liability of the former administrator is limited to the amount which may be necessary to pay unsatisfied debts and the incidental expenses. He

is not liable on this proceeding for any improper payment of legacies, taxes, etc., if not needed for the above purposes."

There is no doubt of the general principle — and it has repeatedly been recognized, both by the supreme court and by this court — that realty passes to the heir, who may enter as soon as descent is cast, and that the rents and products belong to the heirs and are not ordinarily the subject of administration.

The cases cited above from Indiana and other states are in accordance with the statutory provisions of those states alluded to in the opinions. In Indiana the administrator inventories only the personalty, and his bond is so framed as to cover his acts in regard to personalty alone. *Hawkins* v. *Kimball*, 57 Ind. 42. So in the New York case, cited above ( *Griffith* v. *Beecher*, 10 Barb.), it is said that the administrator has no power over the real estate beyond that given by statute, and that the rents accruing after the death of the intestate are not assets in the administrator's hands. But it is held in that case that where the administrator mistakenly supposed that the rents were assets, and on this assumption paid some simple contract debts out of them he will not be thereby estopped from setting up the truth as to the surplus, and insisting when called to account by a simple contract creditor, that the moneys thus received were not assets. In the case from 4 Day ( *Goodrich* v. *Thompson, supra* ), the court says the heirs might enter as soon as descent is cast, *if the estate was solvent*, and that the rents and profits belong to the heirs. The case from Alabama ( 8 Port. 500) was one in which the administrator sued as such to recover the rent of land of the intestate which the administrator had allowed the defendant to occupy. Plaintiff recovered, and the court in affirming the judgment says (the italics are those of the writer of that opinion) that: " The duties of an administrator do not require or even authorize him, *in the ordinary course of administration*, to

exercise a control over the real estate of his intestate, yet, if he assumes to lease it, he will hold the rent in trust for those legally entitled." The Pennsylvania case (*Stoner* v. *Zimmerman, supra*) is merely to the effect that, to effect a conversion of land into money under the terms of a will the power to sell must be absolute and unconditional; and that where the interest of the devisee has been improperly sold by the executor, the devisee may waive the tort, and recover back the money from the administrator of a claimant to whom the executor erroneously paid it. We do not perceive that any of these cases lay down any general rule as to the matter here in controversy differing from that announced in Missouri. "But," says Chief Justice Shaw, in *Wilson* v. *Shearer* (9 Metc. 508), "when the rents and profits of real estate have been received by the administrator with the consent of the heirs, they have been regarded to some extent as assets. At all events it gives the administrator a lawful possession and a good title against all except the heirs." In *Kimball* v. *Sumner* (62 Me. 309), the court says: "The probate court does not necessarily have any jurisdiction over the rents. The administrator neither has the right against the consent of the heirs, nor is he required, to occupy the estate or collect rents therefrom. He may receive the income of the real estate by the consent of the heirs, or with their acquiescence. He would not be regarded as a trespasser in so doing, unless done in opposition to their interests or indifference of their wishes. It is often convenient and sometimes of decided advantage for him to do so, as where the heirs are minors without guardians, or are abroad or are unacquainted with the management of affairs, and where the administrator may be himself an heir, or having intimate business or family relations with the estate, and in other cases. In many cases there is an understanding or agreement that the administrator shall take the rents and account for them as assets for the benefit of the estate, where such a course may save a sale of the

real estate for debts, or where the heirs get the advantage of them in the general distribution. In such case, the administrator would account in the probate court for such assets with the general assets according to such agreement, but not necessarily by force of any requirements of the statute. Such we believe to be the somewhat common practice."

In Massachusetts formerly the administrator was not required to inventory the realty, and it was held that the heirs are entitled to the rents and profits until the realty is sold for the payment of debts. *Gibson* v. *Farley*, 16 Mass. 279. However, Mr. Rand, the learned annotator of these reports, remarks in a note at the end of this case: " As the real estate left by persons deceased is now required to be inventoried by the administrator and is made assets in his hands for the payment of debts, it would seem most agreeable with the spirit, if not with the letter of the law, that the rents and issues of such real estate, by whomsoever they have been received after the death of the intestate should be holden in trust and liable for payment of the debts of the deceased as far as they are wanted for that purpose."

So in *Almy* v. *Crapo* (100 Mass. 220), it is held that, though it is no part of the duty of an administrator to take charge of real estate, and whether he does so or not, creditors are not entitled to require him to account for the income, yet he may receive the rents with the acquiescence of the heirs; and, when it is uncertain whether the estate will be otherwise solvent, it is convenient that he should do so. But, that when the administrator is also heir or devisee, and there is no ground to charge him with the rents except that he is also administrator, he will be presumed to have entered as heir, if that is most for his advantage.

In Missouri it is made the duty of the administrator to inventory the real estate; he may lease it for short terms, under direction of the probate court; he may sell it by

appropriate proceedings, to pay debts and legacies, where the personalty is not sufficient for this, and it is specially provided that " whenever the court shall be satisfied that any real estate need not be sold or leased for the payment of debts of the estate, the executor or administrator shall be ordered to deliver possession of the same to those entitled to it." Rev. Stats., sect. 130, 70, 129, 146.

It has been held by this court, that in Missouri, the realty is not ordinarily assets. (*Re Huckstep*, 5 Mo. App. 582. But we have also held that rents collected by the administrator, which he is not bound to collect, are assets when collected; that, if the administrator leases the realty without authority, and receives rents, these rents, when received, will nevertheless be assets, and he must account for them; that, where there was no order of the probate court to deliver the realty to the heir, and the administrator has leased without authority, the rents are assets when collected by him, for the proper administration of which the sureties of the administrator are liable; and that, where the estate is unsettled, and perhaps insolvent, the devisee can not recover rents so collected by the administrator (*Gamage* v. *Bushell*, 1 Mo. App. 419), and that moneys received by the executor, proceeds of the sale of realty by the executor under a power unduly exercised, are assets for the sale of which the sureties are liable. *Dix* v. *Morris*, 1 Mo. App. 93.

It is well settled in this state, that whilst it is a general principle, that realty descends to the heirs, and the administrator has nothing to do with it, yet, when as a matter of of fact, he does retain charge of it, and collects the rents, he is to account for them to the probate court, and his sureties are liable. *Gamble* v. *Gibson*, 59 Mo. 585; *Dix* v. *Morris*, *supra; s. c.* 66 Mo. 514. *Byrd* v. *Governor*, *etc.*, *to use* (2 Mo. 102), was an action against the surety on an administrator's bond. It was agreed that judgment should be entered up against

the surety for the waste, in favor of each creditor of the estate, in proportion to the amount wasted, and that the surety might make use of any equitable defence he had. The waste was established. It was then shown that the intestate had dug and walled a cellar on a city lot belonging to him ; that, after his death, the widow and administratrix, before the estate was declared insolvent, built a brick house on this cellar wall, at an expense to her of $1,300. She was then removed as administratrix, and defendant appointed *de bonis non*. He applied for an order of sale of realty ; and, under the order, sold all the realty, and the improved lot in question, which lot brought $750 ; which he paid to creditors of the estate. The lot with the cellar and without the building erected by the administratrix, was worth only $100. On appeal, the judgment of the circuit court was reversed, and the surety allowed an equitable credit for the additional value given to the lot by the building ; the supreme court holding it to be inequitable that the creditors should receive the improved value of the estate, and also the assets wasted by the improvement. Judge Tompkins dissented, holding that, both at law and in equity, the expenditure of the money, by building on the estate was waste, as much as if the house had been erected by the administratrix on the land of a stranger.

There can be no doubt, we think, that, where the administrator, with the tacit consent of the heirs, no application to the probate court having been made according to the provision of the statute (Rev. Stats., sect. 130), by any one interested, for an order on him to deliver possession of the realty to those interested, and no such order having been made — as, if he receives the rents and profits, he must account for and distribute them under the supervision of the probate court, so also, under the same supervision, he should pay taxes, cause necessary repairs to be made, and keep the realty from going to destruction in his hands, so far as that is reasonably practicable.

There can be no doubt, that, strictly speaking, an administrator in Missouri can not apply the personalty to pay special taxes for improvements of the realty which taxes accrue after the death of the intestate ; and that he may be refused credits in his settlements for such tax bills. *In re Motier's Estate,* 7 Mo. App. 518 ; *Higgins* v. *Ausmuss,* 77 Mo. 351. But executors and administrators stand in the position of trustees for those interested in the estates which they administer, and in their management generally are liable only for want of due care and skill such as prudent men exercise in the management of their own affairs. Thus, where a testator left, among other property, a hotel in full operation, which he held under a lease for a term of years ; his widow, who was the executrix and a devisee to the extent of one-half of the estate, was unable to dispose of the hotel except at a great sacrifice, and she continued to run it for more than a year, though at a constant loss ; at the end of that time, she disposed of it by sale, at a very large advance upon its appraised value ; but a portion of this purchase-money turned out to be uncollectible. In all this matter, she acted without any order of the probate court. It was held by the supreme court, that, as it appeared that she acted in good faith, and did what she considered to be for the best interest of the estate, she ought to be credited for the rent paid, and also for that portion of the purchase-money which she had been unable to collect, and to be charged with the rents and profits arising from the sale ; and, as the estate was benefited in the end by the course which she had pursued, however irregular, it was held to be "grossly inequitable" and "too harsh an application of the doctrine ordinarily applicable," to charge her with the actual loss, and let the estate reap all the benefit for her skill, care, and management. *Merritt* v. *Merritt,* 62 Mo. 150.

In the case at bar, the executor, together with his sister, were the residuary legatees of an estate supposed to to abun-

dantly solvent. He took charge of the realty without any opposition from any one interested in the estate, and with the tacit consent, at least, of his sister, to whom, together with himself, and subject to the debts and special legacies, all the realty of the estate was devised. He collected the rents and charged himself with them; he paid taxes, general and special, to preserve the estate; he paid special bequests out of funds of the estate in his hands, and thereby stopped the running of interest. At the time he took charge, an action was pending against the estate, of which he and everybody concerned had notice. He seems to have acted with prudence and judgment and good faith. It would appear that, neither he, nor the purchasers of the realty entertained much apprehension as to the result to the estate of the pending suit. At any rate, instead of keeping the estate open to await the result of it, and allowing it to be eaten into by accumulating interest, he made, within three years, a settlement meant to be final, and made upon the usual notice. In this settlement, and in his previous annual settlement, all his dealings with the estate are fully set out. No objection is interposed by any person, and his accounts and vouchers are passed upon and approved by the probate court. Pending the administration, and whilst the other suit is pending, the executor and his sister, the sole residuary legatees, and devisees of the real estate of deceased Carson, convey with warranty a parcel of land which had been devised to them by the testator Carson. The purchaser at this sale took with his eyes open, and with notice, and assumed the risk that, if the Carson estate should prove insolvent, or if it should be necessary to have recourse to the realty, this land might be subjected to payment of debts of the estate and special legacies. Fourteen years after the last settlement of the executor, in the interests of the representatives of these purchasers, an attempt is made to re-open the settlements of the administrator, and to hold the sureties upon his bond liable for a

misapplication of the personalty and a *devastavit*, on the grounds that the Webb purchase-money was assets; that the mortgage debts of the estate were improperly paid by the executor; that the payment of legacies to special 'and residuary legatees must be disallowed; that the payment of special tax bills must be disallowed; that all payments for repairs of realty were illegal; and that the executor should be held now, after the lapse of fourteen years, to show affirmatively, in this proceeding, that the accounts which he returned as uncollectible with the approval of the probate court at the time, were really bad,

This is not a proceeding by any one interested in the estate as heir, distributee, or creditor, to falsify and surcharge the settlements. *Prima facie* they are correct. There can be no doubt from the vouchers in evidence that all money for which the administrator took credit was really paid out by him. He took charge of the realty according to a practice which has prevailed in Missouri. He himself and his sister Mrs. Postlethwaite were alone interested in the preservation of the realty. The allowed demand against the estate was less than $100. The special legatees were interested only to the amount of their legacies, which the administrator has paid. No one applied to the probate court to have the real estate turned over to the heirs or devisees, so far as it was not needed to pay legacies. No one except Mrs. Postlethwaite and her brother, the administrator, who were the devisees, was interested in the realty. Mrs. Postlethwaite was evidently a non-resident. She is described in the will as residing in Somerset County, Pennsylvania, and it appears that the deed to Webb was acknowledged by her in that place in June, 1867. She interposed no objection to the management of the realty by her brother, the administrator; and he was manifestly the only person to take charge of and preserve it. The case is that suggested in *Kimball* v. *Sumner* (*supra*), where it is manifestly convenient and advantageous that the adminis-

tor, being himself an heir or devisee, or the heirs being abroad, the administrator should have charge of the realty and receive the rents.   Conclusions of law to the effect that the administrator, as such, has no concern with the realty, if it is not needed to pay debts or legacies; that the probate court may, under the statute, where this is the case, on application, order that the administrator deliver possession of the realty to the heirs or devisees; and that an administrator may, on the objection of those interested in the estate as creditors or heirs, be refused credit for money paid by him for taxes, are not decisive of the present case.   Here, the administrator who paid the taxes, and his sister, were sole residuary legatees; and the realty was devised to them subject to debts, legacies, and liens.   The reasoning of the court in the *Motier Case* (*supra*), as to the payment of special taxes, that the heirs might perhaps effect a compromise of the claim, does not apply to the case at bar.   The realty was subject to sale, under section 146 of the administration law, for the payment of any legacies which the personalty was insufficient to pay.   The payment of these special legacies stopped interest upon them, which might begin to run at six per cent, after the estate had been in administration one year.   Rev. Stats., sec. 243.

We think that the payment of the special legacies should be allowed.   The payments for repairs, insurance, and general and special taxes, were made with the sanction of the probate court at the time, were for the preservation of the estate, and the credits in the two annual settlements should not now be disturbed as to them.   The same may be said as to the money paid to satisfy deeds of trust which were a lien upon the realty.

We have already decided that the Webb purchase-money was not assets of the estate.   The commissions on sale of Grand Avenue property, the discount of the notes for this sale, the purchase-money paid Harrison, the two payments to the residuary legatees, should all be disallowed.   It will

appear on turning to the account stated at a former page of this opinion, that this will leave the balance in favor of the administrator something over $5,000. The assessments paid for stocks, the commission for selling them, the legacy and personal tax should be allowed, and the settlements need not be disturbed as to them. This leaves in doubt only the credit for attorneys' fees and settlement of the suit of *Allegheny Bank* v. *Carson*, as to which, we see no reason why they should be disallowed; but, as that is quite immaterial, and the balance will be largely in the administrator's favor, even if they be stricken out, we need not consider them. The commissions should be reduced to correspond with the actual money on which the administrator will appear to be entitled to his commissions when the accounts are corrected.

As to the objection that the administrator is not entitled to credit for the accounts and stocks reported as worthless, because he has introduced no evidence as to their value, in this proceeding, we see nothing in that. The burthen was, doubtless on him; and it is to be presumed that he satisfied the court in this respect when the settlement, accepted as a final one, was passed upon. It is not pretended that any of these accounts were collectible, or that any of the stocks unsold and returned as worthless, were of any value.

These disbursements, for which the administrator has obtained credit, seem all, with the exceptions noted above, to have been such as a prudent trustee might have made under the circumstances; and we do not think that they should now be disallowed, for the mere purpose, and with the result, of relieving of its just burdens the realty of the estate, and establishing a large demand against the sureties of an apparently honest administrator and solvent estate.

We think that the judgment of the circuit court should be reversed. It is so ordered, and the cause will be remanded to the probate court to be proceeded with in accordance with the views announced in this opinion. Judge THOMPSON concurs. Judge LEWIS absent.