# Cases

# FOURTH DEPARTMENT,

AT

# GENERAL TERM,

## January, 1887.

---

NANCY H. WILLIAMS, Respondent, v. GEORGE W. G. KINNEY AND WILLIAM R. OLNEY, Appellants.

43    1
43ap334

*Contract for the sale of real estate — when a purchaser is put on inquiry as to the title of one in actual possession — rights of the children of a deceased purchaser to compel payment of the amount due from the personal estate of the deceased.*

In 1866, one Williams, having entered into an agreement with B. N. Huntington, for the purchase of certain lands owned by the latter, entered into possession of the lands, built a house thereon, and made other valuable improvements, and thereafter continued in possession thereof, making payments on the contract up to February, 1874, when he died, leaving a widow, the plaintiff, and seven children, all of whom were minors, and are still living, except one who died when seven years old. The widow and children were, at the time of Williams' death, and have ever since continued in the possession of the said premises. The widow and her father, H. E. Kenyon, were appointed administrators of the estate of Williams. Kenyon took possession of the personal estate, and carried on the ice business, formerly carried on by the deceased, with the aid of the sons of the latter, mingling the assets of the estate and the proceeds of the business with his own moneys. Out of this mixed fund he supported the plaintiff and her children, and his own family, and made payments upon the contract to Huntington, and also paid his own debts and taxes, down to the year 1875.

On November third of that year, after the time fixed by the agreement for the payment of the purchase-price, Huntington gave a notice to Kenyon to be served on the widow and children, declaring that he elected to terminate the contract, and stating that he would take possession of the premises, which notice

however was never served upon them. On November twenty-seventh, an agent and an attorney of Huntington entered the house and in the presence of the widow and some, but not all of the children, declared that they took possession of the house and premises for Huntington. On November twenty-ninth, Huntington deeded the premises to Kenyon by a deed which was duly recorded, of which deed no notice was given to either the widow or children. Thereafter Kenyon gave a mortgage upon the premises to secure persons who had indorsed notes for his accommodation, and who took the mortgage in reliance upon a search made by the county clerk.

In this action, brought by the widow, to whom all the surviving children had conveyed their interests in the premises, to have the mortgage so given to the defendants canceled of record and discharged.

*Held,* that the possession by the plaintiff and her children, under the contract, of the premises described in it, was open, notorious, visible and sufficient to give notice to the defendants of their rights and interests in the premises, or to put the defendants upon inquiry which would have yielded such information.

That upon the death of Williams his equitable interest under the executory contract descended to his heirs-at-law; the unpaid purchase-money being payable out of his personal assets.

That the equitable dower of the widow was subject to the equitable lien existing in favor of Huntington, but that she had an equitable claim to have the personal estate exhausted in discharge of the personal obligation of the husband under the contract of purchase.

That as the evidence failed to show the service of a notice of the intention of Huntington to forfeit the interest of the children, or an actual resumption of possession by him, the legal title acquired by Kenyon, under the conveyance from Huntington, was subject to the equitable rights and interest of the widow and the children.

That even if it were conceded that the facts and circumstances were sufficient to estop the plaintiff from claiming her dower as against the mortgagees, yet such estoppel would not extend to her claim as the grantee of the title and interest of the children.

APPEAL from a judgment, entered in Oneida county upon the report of a referee.

The action was commenced by the plaintiff for the cancellation of a mortgage held by the defendants, upon premises which the plaintiff claimed belonged to her.

The referee found, as a conclusion of law, " That the plaintiff, having become the owner of all the title and interest of the heirs-at-law of her deceased husband and having the right of dower therein, is entitled to the relief demanded in the complaint; that the judgment of the court should declare said mortgage of the defendants to be void and that the same be set-aside and canceled,

and that the county clerk of Oneida county be directed to cancel the same of record, and that plaintiff have her costs and disbursements."

*J. P. Olney*, for the appellants.

*C. W. White*, for the respondent.

HARDIN, P. J.:

June 19, 1866, B. N. Huntington was the owner of the premises described in the complaint, situated in the City of Rome, and entered into a contract with one Isaac N. Williams for the sale of the premises for the sum of $906.66, to be paid within six years from the date of the contract, providing that when the payments were all made the deed was to be delivered to Williams, his heirs and assigns. At about the date of the contract Williams entered into possession of the premises, built a house thereon, surrounded it with a fence and made considerable valuable improvements thereon.

Williams made payments on the contract up to the time of his death, which occurred on the 28th of February, 1874. He left him surviving his widow, who is the plaintiff herein, and seven children, all of whom survive, except Frederick who died when about seven years old intestate, some time after the death of his father. All of the children were infants under the age of twenty-one years at the time of their father's death. The widow and children were in possession of the premises described in the contract, at the time of the death of Williams and have remained in possession ever since.

Williams died intestate and on the 25th day of March, 1874, the plaintiff and her father, H. C. Kenyon, were duly appointed administratrix and administrator of the estate of the deceased.

The intestate left, at the time of his death, some personal property, having been engaged in the ice business, gathering and selling ice in the city of Rome, and having obtained for that business a lease of the ice-house and pond where he gathered and stored ice. The lease had three years to run at the time of his death. At the expiration of it Kenyon, while acting as administrator, procured a renewal of the said lease in his own name for said ice-house and pond. Adjacent to the lot in question was a low place or pond

which the deceased, in his lifetime, filled with earth, and on which he erected a barn on the land thus made, and a fence separated it from the lot described in the contract occupied by the plaintiff and her children. The barn was used to stable teams and place tools used in the ice business; and it was used for a like purpose, after the death of Williams, by his sons and Kenyon, carrying on and continuing the ice business. Kenyon, after his appointment as administrator aforesaid, took possession of the personal estate of the deceased and had the sole management of the estate as such administrator. He caused an inventory to be made of the personal assets of the deceased, exclusive of the lease for the ice-house and pond of which no inventory was taken. The lease was used and treated as a part of the estate of the deceased. The property inventoried amounted to about $900. The ice business was continued by Kenyon, with the aid of the sons of the deceased, in the same way and manner that the deceased had carried it on in his lifetime, and the personal assets of the estate, including the ice then gathered and in the ice-house, valued at about $700, were managed and controlled by the administrator, together with about $4,370 contributed by one of the sons of the deceased, the administrator mingling the same and using it with his own property so that it could not be ascertained how much or what part of it was used for any specific purpose or object, or how much of it came from the increase of the ice business, or from other sources. Out of this mixed fund Kenyon, the administrator, paid debts of the deceased, amounting to about $1,500, and paid Huntington "on said land contract the sum of $662, and supported plaintiff and her children out of the same, with what was done to aid in that respect by the sons of the plaintiff," and also supported his own family, paying his own debts, taxes and insurance "out of the general mixed fund." Kenyon, as administrator, never accounted to the estate, and never had any accounting or settlement of or concerning the property of the estate of the deceased.

The referee has found as a fact, viz.: "That from the death of said I. N. Williams, up to the time of the trial of this action, the plaintiff and her children, the only heirs-at-law of the said deceased, have been in the exclusive possession of the premises described in said land contract."

The referee also found that the intestate paid on the land contract

to Huntington divers sums of money, and that several of the payments were made after the time for the payment of the whole purchase-price, by the terms of said contract, had become due, and that Kenyon paid out of the "mixed fund" the sum of $662 to Huntington on said contract, and which said Huntington received as payment thereon; the last payment having been made November 1, 1875, and which was long after the whole purchase-price on said contract for said premises had become due.

The referee has also found, viz.: "That on the 3d day of November, 1875, said Huntington prepared a notice, and intrusted the same to the said Kenyon, to serve on the plaintiff and her said children, declaring that he elected to terminate said contract, stating therein that he should proceed to take possession of said premises; that said Kenyon testified, on the trial hereof, that he did not serve the said notices on the plaintiff and her children, and the plaintiff and several of the children also testified that such notice was not served on them; * * * that said notice was not served on said plaintiff and her said children."

The referee also found that on the 27th of November, 1875, an agent of Huntington, together with an attorney of Huntington, and at his request, entered the house of plaintiff on said premises, in said contract described, and in the presence of the plaintiff and some of her children, but not all of them (nor does it appear how many or which of the children were present), made a formal declaration that they took possession of the house and premises in behalf of said Huntington, stating that they did so under and in pursuance of a forfeiture of said contract, and stating that the premises thereafter would belong to said Huntington and that he should contract the same to H. C. Kenyon; that no proceedings were ever taken to dispossess the plaintiff or her said children of said premises.

By the evidence it appears that the steps taken by Huntington were with the knowledge and apparently by the procurement of Kenyon, who was thus contriving to get the "legal title to the premises covered by the contract."

The referee also found, viz.: "That on the 29th day of November, 1875, the said Huntington and his wife deeded the premises described in said contract to said H. C. Kenyon, which deed was duly recorded in the county clerk's office of the county of Oneida,

in which county the premises are situated, on the 14th day of December, 1875. That said Kenyon did not inform or let the plaintiff and her children know that he had received or taken a deed in his own name for said premises from said Huntington; nor did they know of it till about two years before this action was commenced, nor till after the said H. C. Kenyon had given the mortgage hereinafter named to the defendants in this action."

It also appears by the findings of the referee that at the same time that Huntington executed the deed to Kenyon, Kenyon executed and delivered to the Rome Savings Bank a mortgage on the same premises "for seven hundred dollars;" that being the sum then due on said contract at that date as balance of the purchase-price of the premises, and which sum was paid to said Huntington therefor; which mortgage was soon thereafter duly recorded in the county clerk's office of Oneida county.

In this action no question is made in regard to the validity of the mortgage to the Savings Bank, as the money received upon it was applied in discharge of Huntington's lien on the real estate covered by the contract.

The referee has also found "that on the 29th day of December, 1883, the said Kenyon executed and delivered to the defendants herein the mortgage described in the complaint herein, covering the same premises, for one thousand five hundred dollars to indemnify them for indorsing for him two several promissory notes for four hundred and forty-three dollars each, payable at some of of the banks in Rome, New York, in three months from date, and all renewals of said notes were to be also secured by such mortgage; and, thereupon, said defendants indorsed other notes for said Kenyon, which said mortgage was also intended to secure." That mortgage was recorded on the 15th * of December, 1883, and he has also found that the notes so indorsed were for Kenyon's benefit, the defendants being accommodation indorsers. That Kenyon is insolvent and unable to pay the notes; that before the defendants took the mortgage from Kenyon they obtained a search from the clerk's office and "found thereby that the title to the premises described in said mortgage was in said Kenyon by deed from said

---

* So in case. [REP.

Huntington, and that they relied expressly on said search in reference to the title of said premises."

The referee also found " that the defendants knew said I. N. Williams in his lifetime, and the said premises occupied by him up to the time of his death; that they knew of the death of said Williams at the time it occurred and that he left a widow and children him surviving; but they did not know that said H. C. Kenyon was one of the administrator's, or was acting as such, of the estate of said Williams when they took said mortgage from said Kenyon ; but that the defendants did know at the time they took said mortgage that the plaintiff was then residing on said premises covered by said mortgage."

He also found, as a matter of fact, viz. : " That before the commencement of this action, the said H. C. Kenyon and each and all of the heirs-at-law of the said I. N. Williams, deceased, duly sold and conveyed, by deed, the premises described in said contract, and covered by said mortgage to the defendants, to the plaintiff herein, who is now the owner of all the right, title and interest which they had therein."

The evidence given upon the trial indicates that the plaintiff and her children were in the open, visible and exclusive possession of the premises described in the contract.   The attempt to show that Kenyon was in possession in conjunction with her children of the premises in question was a failure.   All that he could have said to have been in possession of was the barn, which, by the evidence upon the trial as well as by the referee's findings, appears not to have been situated upon the premises described in the contract but adjacent thereto, upon the earth which had been filled in and upon which the barn was situated, adjacent to and near the premises covered by the contract.

The possession by plaintiff and her children, under the contract, of the premises described in it, was open, notorious, visible and sufficient to give notice to the defendants of the rights and interest of the plaintiff and the children in the premises, or to put the defendants upon inquiry which would have yielded information of the plaintiff's and the childrens' rights and interest in the premises. (*Brown* v. *Volkening*, 64 N. Y., 82.)

The case before us, upon the facts which we have already stated,

distinguish it from *Pope* v. *Allen* (90 N. Y., 302). In that case the occupation was equivocal, "since Pope was also in possession and there was nothing to indicate that defendant's possession was not subordinate to his, or suggest hostility to the record title." Defendants were "put upon inquiry" and omitted to pursue the proper investigation with due diligence. (*Brumfield* v. *Boutall*, 24 Hun., 456.) At the death of Williams his equitable interest as a purchaser under the executory contract for the premises in question was in equity real estate and descended to his heirs-at-law, and the unpaid purchase-money was payable out of the personal assets of the intestate. (*Champion* v. *Brown*, 6 John. Ch., 398; *Griffith* v. *Beecher*, 10 Barb., 432.) The equitable dower of the widow in the premises was subject to the equitable lien existing in favor of Huntington, the vendor of the premises, and arose by operation of law and not as on a purchase for value. She had an equitable claim to have the personal estate exhausted in discharge of the personal obligation of her husband under the contract of purchase of the land. (*Warner* v. *Van Alstyne*, 3 Paige, 513.) Her claim of dower was a mere right of action which could not be conveyed before an admeasurement. (*Siglar* v. *Van Riper*, 10 Wend., 414; *Ritchie* v. *Putnam*, 13 id., 524.) It could not be a lien so as to enable the grantee to sell in his own name. (*Jackson* v. *Van derheyden*, 17 Johns., 167; *Tompkins* v. *Fonda*, 4 Paige, 448.) It could only be reached by a creditor's bill as a thing in action before formal assignment, or supplementary proceedings. (*Tompkins* v. *Fonda, supra* ; *Payne* v. *Becker*, 87 N. Y., 155.) Forfeitures are not favored in law or in equity. Before Huntington could forfeit the interest of the children in the property under the contract in question he would be required to give notice of his intention and to make a demand for fulfillment of the contract within a reasonable time.

In the language of the contract we find the following, viz. : " The said party of the first part, his certain attorney, executors, administrators or assigns, shall have the right to terminate this contract, and thereupon, on giving written notice to the said party of the second part, his heirs, executors, administrators or assigns, of having so terminated said contract, to recover by suit at law all the interest which shall have accrued upon this contract up to the day of so

terminating the same as rent for the use and occupation of said premises, to take immediate possession thereof."

The evidence fails to show the actual resumption o_ possession of the property by Huntington. The evidence indicates that the effort to cut off the rights of the widow and children in the premises was by a concert of action between Huntington and Kenyon. Kenyon was an administrator charged with the duty of applying the personal assets to a satisfaction of the amount due upon the contract. Instead of performing that duty and rescuing the property for the benefit of the widow and children, he apparently entered into a collusive scheme to acquire the legal title of the premises himself with the knowledge, assent and co-operation of Huntington. The children could not be barred of their rights "without notice requiring performance in a specified reasonable time, or in default, notice that their rights would be deemed abandoned." In the absence of such a notice to the children they were entitled to a specific performance of the contract, as against Huntington or his grantee, with the knowledge of their equities. (*Myers* v. *De Mier*, 52 N. Y., 648; *Divine* v. *Divine*, 58 Barb., 264.) It seems to follow, therefore, that when Kenyon took the conveyance from Huntington of the premises he acquired only the legal title thereto, which in his hands, as in the hands of Huntington, was subject to the equitable rights and interest of the widow and children of the deceased who were in possession of the property.

This action is unlike *Havens* v. *Patterson* (43 N. Y., 218), as in that case the sale was to two parties, one of whom died, and the court remarked, viz.: "Although equitable title under the contract was held by the purchasers as tenants in common, yet the contract itself was single. As to the vendor, the purchasers were one party, and a notice to one being in possession, and a refusal by him to perform, in the absence of collusion or bad faith, was sufficient and affected the rights of the purchasers and the vendor under the contract and to the same extent as though both had been served." Besides, in that case the vendor took possession and there were no personal assets in fact, and it appeared that the administrators consented, without any fraud or collusion, to abandon the contract. *Risley* v. *Rice* (40 Hun, 585) is unlike the case in hand. That was a law action where the parties sued upon their legal rights, as dis-

tinguished from their equities, and it did not appear that any of the purchase-money had been paid and the action rested wholly upon the legal title and the right to the possession of the premises, no equities being established sufficient to defeat the legal title.

Plaintiff, upon the facts appearing at the trial, holds three relations to the premises in question. First, as dowress; second, as grantee from Kenyon; third, as grantee from the children of her deceased husband. It is insisted by the appellants that she is estopped from questioning the lien of the defendant's mortgage upon the premises.

It is insisted in the defendant's answer that the plaintiff, by her delay and laches, is "estopped from claiming that said mortgage is not a valid and existing lien on said property, and free and clear of any alleged equitable or other claim of plaintiff." The answer contains no defense setting up the statute of limitations.

If it be conceded that the facts and circumstances disclosed in the evidence were sufficient to estop the plaintiff as dowress in the premises, such estoppel would not extend to her as the grantee of the title and interest of the children. As to that title or interest she stands in the shoes of the children, and such rights as they had in the property at the time of their conveyance to her she is entitled to assert as their grantee. The effect of that estoppel on the plaintiff, at most, could be to bar her of the right to assert her dower in the premises as against the defendant's mortgage upon the assumption that to allow her to make such an assertion of dower would be a fraud upon the defendants as mortgagees. (*Dougrey* v. *Topping*, 4 Paige, 94; *Hawley* v. *James*, 5 id., 453.)

It is difficult to see how the defendants in virtue of their mortgage, although the plaintiff may be estopped from setting up a dower in the premises as against them, can realize all the beneficial fruits of such an estoppel.

Appellant calls our attention to *Payne* v. *Becker* (87 N. Y., 153); *Gregg* v. *Von Phul* (1 Wallace, 274). There the doctrine of estoppel was applied to a deed which was tendered, and it was held "if the deed was justly liable to objections, they should have been stated * * * when the deed was tendered and the money due on the contract demanded." And it was said that if one has a claim against an estate and does not dis-

close it, but stands by and suffers the estate to be sold and improved, with the knowledge that the title has been mistaken, he will not be allowed afterwards to assert his claim against the purchaser. However, without passing upon the question as to how much the defendants may be benefited by the application of the doctrine of estoppel, insisted upon by them as against the plaintiff as equitable dowress in the premises, we may modify the judgment so that it shall not be a bar to the defendants' rights, as mortgagees as against plaintiff's dower interest in the premises.

But my brethren are of the opinion that the judgment should be affirmed, with costs. Such will be the decision of the court.

Present — HARDIN, P. J., BOARDMAN and FOLLETT, JJ.

Judgment affirmed, with costs.